PER CURIAM.
The plaintiff, Kathleen Reneke (“Reneke”), through her legal guardian and conservator, Markie Reneke, appeals from a judgment in favor of Mobile Health Plan d/b/a Prime-Health (“PrimeHealth”) and Mobile Health Plan of Alabama d/b/a PrimeHealth of Alabama (“PrimeHealth of Alabama”) on their claim for reimbursement of medical benefits provided to Reneke. At issue on appeal is the right of PrimeHealth and PrimeHealth of Alabama, both health maintenance organizations (“HMO’s”), to reimbursement.
In 1990, Reneke was involved in a motor vehicle accident in Mobile County, Alabama. She suffered a closed head injury and has been comatose since that time. In August 1991, Markie Reneke, as Reneke’s guardian and the conservator of her estate, sued several defendants based on the accident.
PrimeHealth provided medical services to Reneke from the time of the accident until December 31, 1992. According to Prime-Health, at the time of the accident Reneke was a “covered person” under a 1990 group service agreement between PrimeHealth and Scott Paper Company (“Scott”). Prime-Health says that Reneke’s father, an employee of Scott, was a “subscribing member” of PrimeHealth. In 1991 and in 1992 Scott continued to obtain group medical coverage under group service agreements with Prime-Health, the last such agreement taking effect on January 1, 1992, and continuing in force until December 31, 1992. Effective January 1, 1993, Scott entered into a group service agreement with PrimeHealth of Alabama. PrimeHealth of Alabama began providing medical services to Reneke on January 1, 1993.
On March 4,1993, the trial court appointed Reneke a guardian ad litem in Reneke’s lawsuit against the persons and entities she *506 claimed caused her injuries. Settlement negotiations with these defendants were conducted, and on March 12,1993, the trial court stated that “the parties to this litigation [Re-neke and the alleged tort-feasors] have reached a settlement of this case.” R. 205. That settlement agreement was subject to final approval by the trial court. The Court ultimately approved the settlement, but between the time of the settlement agreement and the court’s approval of it, PrimeHealth and PrimeHealth of Alabama moved to intervene. They state, in pertinent part, that they “sought ... intervention ... in order to pursue direct reimbursement from those persons responsible for Kathleen Reneke’s injuries pursuant to the statutory right of reimbursement conferred on HMO’s by Ala.Code 1975, § 27-21 A-30(b).” Over Reneke’s objections, the motion was granted, and on May 17, 1993, the trial court issued an order holding that PrimeHealth and PrimeHealth of Alabama properly could recover “from [Reneke’s] settlement proceeds,” the value of the benefits they had provided. On June 3, 1993, the trial court entered a judgment approving the settlement and holding, also, that of the monetary amount Reneke was entitled to under that settlement — $2,100,000.00— PrimeHealth and PrimeHealth of Alabama were to be paid a total of $263,607.46.
Reneke argues that PrimeHealth and Pri-meHealth of Alabama’s motion to intervene was untimely. Reneke’s very brief argument in this regard is conclusory at best and does not substantially comply with Ala.RApp.P. 28(a)(5). Accordingly, we do not address it.
Reneke also argues that PrimeHealth and PrimeHealth of Alabama have no right to recoup the value of benefits they provided. PrimeHealth and PrimeHealth of Alabama say that as HMO’s they have a statutory right to reimbursement. The trial court agreed, and held that this right derives from § 27-21A-30(b). That section states:
“A health maintenance organization providing medical benefits or payments to an enrollee who suffers injury, disease, or illness by virtue of the negligent act or omission of a third party is entitled to reimbursement from such third party for the reasonable value of the benefits or payments provided.”
(Emphasis added.)
PrimeHealth and PrimeHealth of Alabama say that this Code section is distinct and unequivocal. They correctly state that “[w]here a statutory pronouncement is distinct and unequivocal, there remains no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985). However, consistent with this reasoning, the trial court’s determination that that section applies here would be incorrect. Reading § 27-21A-30(b) as lacking any ambiguity, we see that the question here — the entitlement to reimbursement from the benefit recipient — is not addressed by that Code section. That section, so read, expresses only a legislative intent to confer the right of reimbursement from, a “third party.”
We observe that PrimeHealth and Prime-Health of Alabama state that in intervening they sought to recover “direct reimbursement” “from the settling defendants.” This contention completely miseharacterizes the situation. They did not actually seek or obtain “direct reimbursement” from the alleged tort-feasors, i.e, “third parties.” They sought and obtained reimbursement from Reneke — a portion of the monies she was entitled to under the settlement agreement reached between her and “the settling defendants.” We reverse the judgment permitting reimbursement under the statute.
Finally, PrimeHealth and PrimeHealth of Alabama suggest that, in any event, they would be contractually entitled to reimbursement from Reneke. This matter was raised in the trial court but was not determined, evidently because the trial court found for PrimeHealth and PrimeHealth of Alabama as to all of the plans in issue on the statutory ground that we have discussed. Therefore, the contract claim is not before us.
REVERSED AND REMANDED.
KENNEDY, INGRAM, and COOK, JJ., concur.
*507 ALMON * and BUTTS,** JJ., concur in the result.
MADDOX and HOUSTON, JJ., dissent.