Peggy DEES, et al., Plaintiffs,

v.

PRIMEHEALTH, etc., Defendant.

Civ. A. No. 94–0016–S.

United States District Court,
S.D. Alabama,
Southern Division.

July 31, 1995.

Edward Massey, Mobile, AL, for Peggy Dees.

Mark Ulmer, Mobile, AL, for Julie Kollin.

William M. Lyon, Jr., Jeffrey A. Head, Mobile, AL, for PrimeHealth, etc.

## ORDER

STEELE, United States Magistrate Judge.

This cause is before the Court on the following matters: Motion for Summary Judgment of Defendant Mobile Health Plan of Alabama, Inc., doing business as Prime-Health of Alabama (PrimeHealth) (Doc. 13) and supporting documents, Plaintiff Julie Kollin's Motion for Summary Judgment (Doc. 15) and supporting documents, Plaintiff Peggy Dees's Motion for Remand (Doc. 17) and supporting brief, Plaintiff Dees's Motion for Summary Judgment and supporting brief, PrimeHealth's responses to Dees's and Kollin's Motions for Summary Judgment (Docs. 23 and 24) and to Dees's Motion to Remand (Doc. 25), Dees's Reply to Prime-Health's Motion for Summary Judgment (Doc. 26), and Plaintiff Kollin's Reply in Support of her Motion for Summary Judgment (Doc. 29). The Court also has considered PrimeHealth's Memorandum Brief Regarding Stop–Loss Insurance (Doc. 28), the Responses of Dees and PrimeHealth to the *Reneke* decision by the Alabama Supreme Court (Docs. 31 and 32), and Kollin's response by letter dated June 8, 1995, to the *Reneke* decision. Pursuant to section 636(c) of Title 28 of the United States Code, the parties have consented to have all proceedings, including the entry of judgment, conducted by a United States Magistrate Judge. Upon review and consideration of all of the above, the Court finds that the motion for summary judgment of Defendant Prime-Health is due to be granted in part and denied in part, the motion for summary judgment of Plaintiff Julie Kollin is due to be granted, and the motions for summary judgment and to remand of Plaintiff Peggy Dees are due to be denied. Accordingly, the Court enters the following order.

### Facts

This case began as a declaratory judgment action involving rights to payments for medical benefits under state law brought by Plaintiff Peggy Dees in the Circuit Court of

Mobile County against Defendant Prime-Health. The action was removed to this Court by PrimeHealth on the allegation that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (ERISA), preempts state law. By order of court this action was consolidated with another wherein PrimeHealth had sued Dees and Julie Kollin, who allegedly injured Dees. Kollin was designated a party plaintiff in the present action.

Dees was injured when the automobile driven by Kollin went out of control and struck Dees's automobile.[1] At the time Dees was injured, she was an employee of the Mobile Press Register (MPR). The MPR offered health care benefits to its employees, including, *inter alia,* coverage through PrimeHealth, a health maintenance organization (HMO). Persons who had been full-time employees of the MPR for at least one month were eligible to elect coverage under Prime-Health. If they did so, the employees were required to contribute fifty percent of the monthly cost of contract coverage. At the time of her accident, Dees was covered by PrimeHealth.

The MPR deducted the employees' share of the PrimeHealth contract costs from the employees' paychecks each month. The personnel department for the MPR received and authorized payment of the monthly statements from PrimeHealth. The personnel department also explained the provisions of the PrimeHealth contract and provided appropriate materials to employees who were considering such coverage, maintained records regarding employees who were covered under PrimeHealth and those who dropped coverage, and completed the PrimeHealth forms for such employees. The MPR (and not its employees) dealt with PrimeHealth regarding the maintenance of the contract. The employees dealt directly with PrimeHealth only on claims.

The contract under which PrimeHealth provided medical benefits to Dees included the following subrogation provisions:

If benefits are provided to a Covered Person by PrimeHealth of Alabama for injuries or sickness caused under circumstances creating a cause of action in favor of the Covered Person against any person, firm, corporation or other entity, Prime-Health of Alabama shall be subrogated to such Covered Person's rights and shall be entitled to recover the proceeds that may result from the exercise of any rights of recovery which the Covered Person may have against any such person, firm, corporation or other entity to the extent of the actual amount of the benefits provided or paid for, or the reasonable value of services provided by PrimeHealth of Alabama, plus reasonable costs of collection. The Covered Person shall execute and deliver instruments and papers to do whatever is necessary to secure such rights and shall do nothing to prejudice the subrogation rights of PrimeHealth of Alabama. PrimeHealth of Alabama may, to enforce such rights, institute and prosecute legal proceedings in its name or in the Covered Person's name, against any such person, firm or corporation against whom such recovery rights arise, intervene or join any action or proceeding brought by the Covered Person against such person, firm or corporation or compromise or settle any such claim.

\* \* \* \* \* \*

PrimeHealth of Alabama may, at its option, collect amounts to which it has subrogation rights from the proceeds of any settlements or judgment that may be recovered by any Covered Person or his legal representative. No settlement, compromise or waiver of any rights in any action in which PrimeHealth of Alabama may have subrogation rights shall be entered into without PrimeHealth of Alabama's written consent. Any proceeds of settlement or judgment shall be held in trust by the Covered Person for the benefit of PrimeHealth of Alabama under these subrogation provisions and the Covered Person shall promptly reimburse the Plan

---

1. Dees was also injured by an automobile driven by Mark Berg. Mr. Berg is not a party to the present action.

to the extent of any and all benefits provided under this contract.

Defendant PrimeHealth's Notice of Removal, Exhibit A at Art. 6, para. B.

PrimeHealth incurred approximately $30,-000 for medical services to treat Dees. Dees settled the underlying tort action with Kollin and Berg, but PrimeHealth did not know of or consent to the settlement. PrimeHealth now claims reimbursement of the reasonable value of medical benefits provided to Dees from Dees pursuant to the subrogation clauses in the contract, or from Kollin pursuant to section 27–21A–30(b) of the Alabama Code. That section provides that an HMO which pays medical benefits to an enrollee injured by the negligence of a third party "is entitled to reimbursement from such third party for the reasonable value of the benefits or payments provided." Ala.Code § 27–21A–30(b) (1986).

### Analysis

Two issues are presented to the Court: (1) whether, by virtue of *Powell v. Blue Cross & Blue Shield*, 581 So.2d 772 (Ala.1990), Prime-Health is precluded from exercising its contractual subrogation rights to recover from Dees the reasonable value of medical benefits provided to Dees, and (2) whether Prime-Health is entitled to recover the reasonable value of medical benefits provided to Dees from Kollin pursuant to section 27–21A–30(b) of the Alabama Code. Each issue has both jurisdictional and substantive components; the Court addresses these in turn.

### A. Jurisdiction

The ERISA is "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Congress has deemed appropriate to replace state regulation of employee benefit plans with a uniform federal system. *See*

463 U.S. at 99, 103 S.Ct. at 2901 (quoting 120 Cong.Rec. 29,197 (1974)). Accordingly, the ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" not exempt under the ERISA. 29 U.S.C. § 1144(a).[2]

■ In the present case, there are two initial jurisdictional questions to be considered: (1) whether the PrimeHealth plan is an employee welfare benefit plan covered by the ERISA, and (2) whether the state laws at issue relate to the ERISA plan such that preemption is warranted.[3] There appears to be little question that the PrimeHealth plan in the present action is covered by the ERISA. The test as to whether an employer has established an ERISA employee welfare benefit plan comprises five factors:

(1) a "plan, fund, or program"

(2) established or maintained

(3) by an employer or by an employee organization, or by both,

(4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, and other benefits

(5) to participants or their beneficiaries. *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc). *See also Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 567 (11th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994).

With respect to the first requirement, *Donovan* states that "a 'plan, fund, or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." 688 F.2d at 1372. Such a "plan, fund, or program . . . is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 1373. Prerequisites (3), (4), and (5), the *Donovan* court indicated, "are either self-explanatory or defined by

---

**2.** The PrimeHealth plan at issue here does not appear to fall within any exemption. *See* 29 U.S.C. § 1003(b).

**3.** The parties do not appear to have raised precisely this issue, but a court is obliged to take

notice on its own motion whether it has jurisdiction and thus may raise this type of issue. *See, e.g., Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204–05, 47 L.Ed.2d 435 (1976).

statute." *Id.* at 1371; *see* 29 U.S.C. §§ 1002(5), 1002(4), 1002(6), and 1002(8).

■ In the present action, there is no dispute that the MPR makes available to its employees health benefits for which it and its employees pay, and for which its employees may apply directly to PrimeHealth. Although, as Dees points out, the MPR played a minimal role in administering the Prime-Health plan, this fact is immaterial to whether the plan constitutes an employee benefit plan under ERISA, for the Eleventh Circuit has held that there is no requirement that the employer play any role at all in the plan's administration. *See Randol v. Mid–West Nat'l Life Ins. Co.,* 987 F.2d 1547, 1550–52 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 180, 126 L.Ed.2d 139 (1993); *Donovan,* 688 F.2d at 1374–75. Therefore, it appears that the *Donovan* test has been met, and that the HMO plan provided through Prime-Health to MPR employees constitutes an employee welfare benefit plan under the ERISA. Consequently, the removal of this action from state court to federal district court was proper. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Having established that the PrimeHealth plan falls under the ERISA, the Court must next consider whether the state laws at issue "relate to" the PrimeHealth plan such that preemption is warranted.[4] "Relate to" was defined in the ERISA context by the United States Supreme Court as follows: "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a *connection with* or *reference to* such a plan." *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900 (1983) (emphasis added). This somewhat nebulous definition was expanded in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (hereinafter *Travelers* ).

*Travelers* involved a challenge to a state statute regulating HMOs. The New York statute at issue in *Travelers* imposed sur-

charges for in-patient hospital care on commercially insured patients and HMOs, but not on nonprofit health service corporations such as Blue Cross and Blue Shield. Several commercial insurers sued, alleging that the surcharge provisions were invalid because they were preempted by the ERISA. The United States Supreme Court disagreed, holding that the surcharge provisions did not "relate to" employee benefit plans governed by the ERISA and that the state had the right to control health care costs. As stated by the *Travelers* Court:

> The latter alternative . . . can be ruled out. The surcharges are imposed upon patients and HMOs, regardless of whether the commercial coverage or membership, respectively, is ultimately secured by an ERISA plan, private purchase, or otherwise, with the consequence that the surcharge statute cannot be said to make 'reference to' ERISA plans in any manner.

514 U.S. at ——, 115 S.Ct. at 1677. The Court then examined whether the surcharge statute had "a connection with" the ERISA plans.

After reviewing previous cases addressing congressional intent in establishing the ERISA, the Court noted that the "basic thrust of the preemption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." 514 U.S. at ——, 115 S.Ct. at 1672. To determine whether the congressional purpose is thwarted, a court must look at the purpose and effects of the state statute. 514 U.S. at ——–——, 115 S.Ct. at 1678–79. Thus, for example, state laws that mandate employee benefit structures or their administration have been held preempted by the ERISA. *See, e.g., Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900 (prohibition of discrimination against pregnancy and mandate of certain benefits held related to benefit plans); *FMC Corp. v. Holliday,* 498 U.S. 52, 60, 111 S.Ct. 403, 408–09, 112 L.Ed.2d 356 (1990) (prohibition of required reimbursement to plan from benefi-

---

**4.** Although the dispute between Dees and Prime-Health over subrogation concerns the application of an Alabama Supreme Court case, case law would be considered "state law" under the

ERISA. *See* 29 U.S.C. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State").

ciary in the event of third-party recovery held related to benefit plans).

■ Where, however, a state statute has only an indirect economic influence on benefit plans, the statute is not preempted. As examples of these circumstances, the *Travelers* Court cited quality control, workplace regulation, and cost-control regulations. The purpose of the surcharge statute was to equalize the risk taken by hospitals in taking patients from Blue Cross and Blue Shield (who pay the hospitals promptly and efficiently) and other organizations (who presumably do not). The effect of the surcharge statute was to make Blue Cross and Blue Shield coverage a more attractive "insurance alternative and thus have an indirect economic effect on choices made by insurance buyers." 514 U.S. at ——, 115 S.Ct. at 1679. The *Travelers* Court found that while the surcharge statute may have some effect on benefit plans, the statute "has only a tenuous, remote, or peripheral connection with covered plans." 514 U.S. at ——, 115 S.Ct. at 1680 (quoting *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. ——, —— n. 1, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992)). In fact, *Travelers* specifically noted that "laws with only an indirect economic effect on the relative costs of various health insurance packages in a given State are a far cry from those 'conflicting directives' from which Congress meant to insulate ERISA plans." 514 U.S. at ——, 115 S.Ct. at 1680.

■ In the case at bar, the Court applies *Travelers* first to the *Powell* right-to-subrogation issue and then to the statute allowing an HMO to recover the value of medical benefits from the third-party tort-feasor who allegedly injured the HMO enrollee. In *Powell v. Blue Cross & Blue Shield,* plaintiff Cynthia Powell had sued the driver and the owner of the automobile that had permanently injured her, alleging over $7,000,000 in damages for her injuries. 581 So.2d 772, 773 (Ala.1990). She settled, however, for the limits of the defendants' liability policy, $100,-000. Blue Cross and Blue Shield, which had paid over $27,000 for Powell's medical expenses, filed a motion to intervene in the lawsuit, seeking subrogation for such

amount. The trial court recognized that the settlement did not make the plaintiff whole, but permitted the intervention and awarded Blue Cross and Blue Shield reimbursement of the amounts it had paid for Powell's medical treatment. *Id.*

On appeal, the issue, as phrased by the Alabama Supreme Court, was as follows: "May the insurer/indemnitor, by contract providing for subrogation, claim reimbursement of its payment to the insured/indemnitee, out of the insured/indemnitee's recovery from the third-party tort-feasor, when the third-party recovery does not exceed the insured/indemnitee's total loss?" *Id.* After reviewing Alabama law and cases from other jurisdictions, the court answered the question in the negative: "We are of the opinion, however, that the better reasoned rule is that the insurer is *not* entitled to subrogation unless and until the insured has been made whole for his loss. We so hold." *Id.* at 777. To make such a determination, the insurer must conduct the following analysis:

> For purposes of subrogation, the test for whether the insured has been made whole is whether the injured plaintiff has been completely compensated for *all* of his loss. Likewise, *all* sources of reimbursement must be considered in determining the extent to which the plaintiff has been compensated. It is when the plaintiff's recovery from all sources exceeds the sum total of the plaintiff's damages that the right to subrogation arises.

*Id.* The *Powell* court also noted that "the decision in this case is not limited to insurance companies but applies to any indemnitor who claims a right to subrogation." *Id.* at 774 n. 4.

Using the analysis set forth in *Travelers,* the Court must consider whether the law set forth in *Powell* "relates to" the PrimeHealth plan at issue here. Such a rule "relates to" an employee benefit plan if it makes "reference to" or has a "connection with" such a plan. *Travelers,* 514 U.S. at ———————, 115 S.Ct. at 1676–77 (quoting *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900).

*Powell* does not make "reference to" an employee benefit plan. As in *Travelers,* the

rule at issue here has far greater application than to ERISA plans. *See Powell*, 581 So.2d at 774–75, 774 n. 4. Accordingly, the *Powell* rule does not relate to an ERISA plan in the sense of making reference to such plan.

The Court finds, however, that *Powell* does have a "connection with" ERISA plans. To make this determination, the Court, in accordance with *Travelers*, examines the purpose and effects of the *Powell* rule and their impact upon the nationally uniform administration of employee benefit plans. *See Travelers*, 514 U.S. at ———, 115 S.Ct. at 1677–78. The purpose of the *Powell* rule lies in the equitable principles upon which subrogation is based: "Equity requires that the insured should at least recover his or her loss before the insurer is subrogated." 581 So.2d at 776. Although the rule is not intended to thwart the congressional intent regarding nationally uniform administration of ERISA plans, application of the rule would have such an effect. *See, e.g., FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

In *Holliday*, a Pennsylvania law prohibited plans from requiring reimbursement for medical expenses from beneficiaries who recovered from third-party tort-feasors. The United States Supreme Court noted that it has "not hesitated to apply ERISA's preemption clause to state laws that risk subjecting plan administrators to conflicting state regulations," the rationale being, "To require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits." 498 U.S. at 60, 111 S.Ct. at 408. Consequently, the Court found that Pennsylvania's antisubrogation statute had a connection to ERISA benefit plans and held that the statute was preempted by the ERISA. 498 U.S. at 65, 111 S.Ct. at 411.

Alabama's antisubrogation rule as explained in *Powell* would be more troublesome to administrators than the statute at issue in *Holliday*. The Pennsylvania statute barred recovery by the plan in actions arising only out of motor vehicle accidents. 75 Pa.Cons. Stat. § 1720 (1987). In Alabama, however, administrators would be required in every case to determine whether the beneficiary had been "made whole" before determining whether its contract with the beneficiary would be enforceable. If the beneficiary had not been "made whole" as defined in *Powell*, the Alabama beneficiary "who recovered in negligence actions against tortfeasors would, by virtue of the state law, in effect have been entitled to benefits in excess of what plan administrators intended to provide, and in excess of what the plan provided to employees in other States." *Travelers*, 514 U.S. at ———, 115 S.Ct. at 1678. Such a scheme would "frustrate plan administrators' continuing obligation to calculate uniform benefit levels nationwide." *Holliday*, 498 U.S. at 60, 111 S.Ct. at 409; *accord, Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

Consequently, as in *Holliday*, the antisubrogation rule at issue here is preempted by the ERISA unless it is saved by virtue of the "savings" clause. *See* 29 U.S.C. § 1144(b)(2)(A). The Eleventh Circuit has held, however, that the "savings" clause is not applicable to HMOs, where HMOs are not considered insurance companies. *O'Reilly v. Ceuleers*, 912 F.2d 1383 (11th Cir.1990). Although *O'Reilly* was based on Florida law, both Florida and Alabama distinguish between HMOs and insurance companies. *See id.* at 1389, Ala.Code § 27–21A–23 (1986) ("provisions of the insurance law and provisions of health care service plan laws shall not be applicable to any health maintenance organization"). Therefore, insofar as *Powell* may be applicable to HMOs, it is not saved by the "savings" clause, which applies only to state laws which regulate insurance. Accordingly, *Powell* is preempted by the ERISA and PrimeHealth is entitled to enforce its contract with Dees. PrimeHealth's motion for summary judgment, as it relates to the *Powell* issue, is therefore due to be granted, and Dees's motion for summary judgment is due to be denied.

The Court now examines the second issue: whether PrimeHealth is entitled to recover from the alleged tort-feasor, Kollin pursuant to section 27–21A–30(b) of the Alabama Code. It appears that this statute has only

an indirect economic effect on benefit plans which, by itself, may not be enough to require preemption. When considered in tandem with the above *Powell* issue, however, resolution of the two issues produces conflicting remedies and poses the possibility of double recovery.[5] Further, these two issues have a common nucleus of operative fact and constitute a single case or controversy. Accordingly, the Court deems it appropriate to exercise ancillary jurisdiction over the issue of the application of the statute requiring reimbursement to an HMO from a third party. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[6]

In applying a *Travelers* analysis, the Court finds that section 27–21A–30(b) of the Alabama Code does not make "reference to" ERISA-governed benefit plans, but, as did the statute at issue in *Travelers*, refers to HMOs in general, which may be secured by an ERISA plan or not. The Court does find that the statute has a "connection with" ERISA-governed plans, however. Congress could not have intended for plan administrators only in Alabama to have two choices of parties against whom to file for subrogation. If one looks solely to the first issue, *Powell* is preempted by the ERISA and the contract controls, which allows PrimeHealth to go against Dees, the injured party, to recover the value of medical benefits provided to Dees. On the other hand, if section 27–21A–30(b) is applied, PrimeHealth *cannot* go against Dees but can recover only against the alleged tort-feasor, Kollin, which contradicts the terms of the contract. *See Reneke v. Mobile Health Plan*, 1995 WL 150929, —— So.2d —— (Ala.) (pursuant to section 27–21A–30(b) of the Alabama Code, an HMO cannot be reimbursed for medical expenses from settlement proceeds awarded to its beneficiary by the third-party tort-feasor, but rather must go directly against the third-party tort-feasor). Allowing both remedies to stand would certainly favor HMOs (by allowing to choose the party with the deeper pocket for reimbursement), but, just like the antisubrogation statute which is preempted, requires plan administrators to have a different set of rules for beneficiaries in Alabama. Therefore, the statute at issue has a "connection with" the plan and consequently "relates to" the plan as those terms are defined by *Travelers.* Accordingly, the Court finds that the statute requiring recovery by an HMO against the tort-feasor who allegedly injured the enrollee is preempted. The motion for summary judgment filed by PrimeHealth is therefore due to be denied as it relates to this issue, and the motion for summary judgment filed by Kollin is due to be granted.

### Conclusion

For the foregoing reasons, it is ORDERED, ADJUDGED, and DECREED that Defendant PrimeHealth's motion for summary judgment be and hereby is GRANTED IN PART as it pertains to the preemption of *Powell v. Blue Cross and Blue Shield* by ERISA and DENIED IN PART as it pertains to the application of section 27–21A–30(b) of the Alabama Code; Plaintiff Julie Kollin's motion for summary judgment be and hereby is GRANTED; and Plaintiff Peggy Dees's motions for remand and summary judgment be and hereby are DENIED.

The Court in its discretion deems it appropriate to award no attorneys' fees. *See* 29 U.S.C. § 1132(g). Each party will bear its own costs.

It is so ORDERED.

---

**5.** It should be noted that no party in the instant action has suggested that it would pursue such a recovery. The Court is mindful, however, of the potential implications of its decision in other circumstances.

**6.** The Court also notes that ancillary jurisdiction was asserted in the action consolidated with the present one, and that no objection to such jurisdiction was lodged.