REPORT AND RECOMMENDATION REGARDING DEFENDANTS NORTHEAST UTILITIES SERVICE COMPANY AND CIGNA HEALTHCARE OF MASSACHUSETTS’ MOTION FOR SUMMARY JUDGMENT (Docket No. 20)
 

 NEIMAN, United States Magistrate Judge.
 

 I. INTRODUCTION
 

 This case concerns health care benefits MaryEllen Cellilli (“Plaintiff’) alleges are due her as a result of her divorce from her former husband, Vincent Cellilli. Plaintiff asserts a violation of Massachusetts General Laws, Chapter 176G, § 5A (“Section 5A”). Defendants Northeast Utilities Service Company (“Northeast”) and CIGNA Healthcare of Massachusetts (“CIGNA”) (together “Defendants”) have jointly moved for summary judgment, arguing that Section 5A is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001
 
 et seq.
 
 (“ERISA”). Plaintiff opposes. Vincent Cellilli, who is also a defendant in the instant action, has remained silent. The matter has been referred to this Court for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons indicated below, the Court recommends that Defendants’ motion for summary judgment be denied and that the matter be remanded to state court.
 

 II. SUMMARY JUDGMENT STANDARD
 

 The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties’ proof, in an effort to determine whether trial is actually required.
 
 McIntosh v. Antonino,
 
 71 F.3d 29, 33 (1st Cir.1995) (citing
 
 Wynne v. Tufts Univ. Sch. of Med.,
 
 976 F.2d 791, 794 (1st Cir.1992),
 
 cert. denied,
 
 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where there is an absence of a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment.
 
 Jimenez v. Peninsular & Oriental Steam Navigation Co.,
 
 974 F.2d 221, 223 (1st Cir.1992).
 

 III. FACTUAL AND PROCEDURAL BACKGROUND
 

 There is no genuine dispute as to the following material facts of record. In May of 1994, the Hampden County Probate and Family Court entered a divorce judgment which incorporated, but did not merge, the provisions of a separation agreement executed by Plaintiff and her husband, Vincent Cellilli. A portion of the separation agreement required Mr. Cellilli to continue to provide health insurance to Plaintiff through his employer, Northeast. At the time of their divorce, the Cellillis’ health benefits were provided and administered by CIGNA, a Health Maintenance Organization (“HMO”).
 

 After the divorce, both Northeast and CIGNA refused to continue to cover Plaintiff through Mr. Cellilli’s HMO health plan. Instead, Northeast sent a notice to Plaintiff,
 
 *74
 
 pursuant to the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1162
 
 et seq.
 
 (“COBRA”), indicating that, on the date her divorce became final, she would be entitled to continue coverage under COBRA at her own expense.
 

 On March 23, 1995, Plaintiff, apparently-dissatisfied with the proposed COBRA arrangement, filed a complaint for modification in the Hampden County Probate and Family Court. In the complaint, Plaintiff requested that the court modify her divorce judgment so that Northeast and CIGNA would be required to comply with Section 5A, the full text of whieh is set out in the margin, and continue to cover her under Mr. Cellilli’s HMO health plan.
 
 [1]
 

 On April 12, 1995, CIGNA filed a notice of removal of Plaintiff’s action to this Court pursuant to 28 U.S.C. § 1441, asserting original jurisdiction of a federal question under ERISA.
 
 [2]
 
 Subsequently, Defendants filed the instant motion for summary judgment.
 

 TV. DISCUSSION
 

 The sole argument asserted by Defendants in their motion for summary judgment is that Plaintiffs Section 5A claim is preempted by ERISA. See 29 U.S.C. § 1144(a). In response, Plaintiff argues that while ERISA generally supplants all state laws affecting ERISA benefits, the insurance “savings clause”, 29 U.S.C. § 1144(b)(2)(A), bars such preemption. The issues raised are significant, particularly given the host of health care reforms recently enacted or under consideration by the various states, including Massachusetts. See generally, Jesselyn Alicia Brown,
 
 ERISA and State Health Care
 
 
 *75
 

 Reform: Roadblock or Scapegoat?,
 
 13 Yale Law & Policy Rev. 339 (1995). The Court proceeds with care.
 

 A
 
 THE STATE LAW
 

 Statutes concerning the regulation of insurance in Massachusetts can be found in Chapters 174A through 178 of the Massachusetts General Laws. Although Chapter 175 is the only chapter specifically entitled “Insurance,” it is clear that the majority of the other chapters within this grouping also apply to insurance. See, e.g., M.G.L. chs. 174A (“Regulation of Rates for Fire, Marine and Inland Marine Insurance, and Rating Organizations”); 175A (“Regulation of Rates for Certain Casualty Insurance, including Fidelity, Surely and Guarantee Bonds, and for All Other Forms of Motor Vehicle Insurance, and Regulation of Rating Organizations”); 175B (“Unauthorized Insurer’s Process Act”); 175C (“Urban Area Insurance Placement Facility”); 175D (“Massachusetts Insurers Insolvency Fund”); 175E (“Regulation of Rates for Motor Vehicle Insurance”); 175F (“Medical Malpractice Self-Insurance Trust Funds”); 176D (“Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance”); 178 (“Savings Bank Life Insurance”). One of the “Insurance” chapters, Chapter 176G, applies to the HMO industry.
 
 [3]
 

 Section 5A of Chapter 176G, provides for the continued coverage of a divorced spouse in the other spouse’s “group health maintenance contract” upon the couple’s divorce. The focus of Section 5A is subsection (a) which provides as follows:
 

 In the event of the granting of a judgment absolute of divorce or of separate support to which a member of a group health maintenance contract is a party, the person who was the spouse of said member prior to the issuance of such judgment shall be and remain eligible for benefits under said contract, whether or not said judgment was entered prior to the effective date of said contract, without additional premium or examination therefor, as if said judgment had not been entered____
 

 M.G.L. Ch. 176G, § 5A(a).
 
 [4]
 
 Under the plain language of subsection (a), Plaintiff is entitled to continued eligibility in the benefits of Mr. Cellilli’s health maintenance contract, “without additional premium,” since she was the “spouse” of “a member of a group health maintenance contract” and held that status “prior to the issuance of [her divorce] judgment.” Thus, unless Section 5A is preempted by federal law, the refusal by Defendants to continue Plaintiffs eligibility in the benefits of Mr. Cellilli’s plan after her divorce would appear to be in error.
 

 B. ERISA PREEMPTION
 

 In crafting ERISA, Congress intentionally inserted a broad preemption clause, commonly referred to as Section 514(a), which provides that the statute’s provisions “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.” 29 U.S.C. § 1144(a). See
 
 Pilot Life Ins. Co. v. Dedeaux,
 
 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987) (recognizing broad scope and purposes of Section 514(a)). Notwithstanding this broad language, the Supreme Court has “never assumed lightly that Congress has derogated state regulation, but instead ha[s] addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law.”
 
 New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,
 
 — U.S.-,
 
 *76
 
 -, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995) (citing
 
 Maryland v. Louisiana,
 
 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981)). Thus, even in ERISA cases, “where federal law is said to bar state action in fields of traditional state regulation,” the Supreme Court has consistently “worked on the ‘assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.’ ”
 
 Id.
 
 (quoting
 
 Rice v. Santa Fe Elevator Corp.,
 
 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).
 

 ERISA preemption has been broadly construed by the Supreme Court to include state statutory and common-law actions that “relate to” employee benefit plans.
 
 Pilot Life, supra.
 
 However, even state laws that “relate to” employee benefit plans may be saved from preemption. In particular, the insurance “savings clause” rescues from preemption “any law of any State which regulates insurance.” 29 U.S.C. § 1144(b)(2)(A). See
 
 Metropolitan Life Ins. Co. v. Massachusetts,
 
 471 U.S. 724, 733, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985) (ERISA preemption “substantially qualified by” insurance savings clause). The insurance savings clause is itself limited by the “deemer clause” which states that “[n]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts.” 29 U.S.C. § 1144(b)(2)(B).
 

 Applying Section 514(a) to the facts of this case, there is no question, and in fact no dispute, that the plan at issue is an “employee benefit plan” within the meaning of ERISA. See 29 U.S.C. § 1003. Nor is there a question that Section 5A “relates to” such a plan, see
 
 Bergin v. Wausau Ins. Co.,
 
 863 F.Supp. 34, 36 (D.Mass.1994) (holding that M.G.L. ch. 175, § 1101, the parallel statute cited
 
 supra
 
 at n. 4, “clearly ‘relates to’ an employee benefit plan”) (citations and footnote omitted). Accordingly, the Court proceeds to the crux of the parties’ dispute: whether Section 5A “regulates insurance” within the insurance savings clause and, if so, whether, it may still be preempted pursuant to the deemer clause.
 

 1. The Insurance Savings Clause
 

 As indicated, a state law that “regulates insurance” is not subject to ERISA preemption by virtue of the insurance savings clause. Whether a state law “regulates insurance” under the insurance savings clause has often been determined by reference to cases interpreting the phrase “business of insurance” in the McCarran-Ferguson Act, 15 U.S.C. 1101
 
 et seq.
 
 See, e.g.,
 
 Physicians Health Plan, Inc. v. Citizens Ins. Co. of America,
 
 673 F.Supp. 903, 907 (W.D.Mich.1987) (citing
 
 Metropolitan Life,
 
 supra). Accordingly, the question of whether a state law regulates the business of insurance is a function of whether the law (1) spreads risk, (2) integrally affects the relationship between the insurer and the insured, and (3) is limited to the risk spreading parties.
 
 Id.
 

 On its face, Section 5A does all three: it speaks of “additional insuring risks,” “premiums” and “health insurance coverage,” it refers to “the commissioner of insurance,” and it integrally affects the relationship between the risk spreading parties — the HMO, and its doctors, and the insured. In addition, although Section 5A differs slightly from its general insurance counterpart, Section 1101, in that the coverage required is pursuant to a “health maintenance contract” rather than an “insurance plan,” this difference is immaterial. In each instance the coverage required meets the statutory definition of an insurance contract: “an agreement by which one party for a consideration promises to pay money or its equivalent, or to do an act valuable to the insured, upon the destruction, loss or injury of something in which the other.party has an interest.” M.G.L. ch. 175, § 2. See also M.G.L. ch. 176G, § 1 (HMO defined, in part, as a company which “provides or arranges for the provision of health services to voluntarily enrolled members in exchange primarily for a prepaid per capita or aggregate fixed sum”). Thus, CIGNA, for consideration, promises to provide medical benefits and services to Northeast employees, upon injury or
 
 *77
 
 illness. In other words, CIGNA assumes the risk that the cost of services and benefits provided will exceed the cost of prepayment.
 

 In short, Section 5A “directly controls the terms of insurance contracts____ It does not merely have an impact on the insurance industry; it is aimed at it.”
 
 FMC Corp. v. Holliday,
 
 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990). It is thus saved from ERISA preemption “[u]nless [it] is excluded from the reach of the saving clause by virtue of the deemer clause.”
 
 Id.
 

 2. The Deemer Clause
 

 The deemer clause, to repeat, provides that an employee benefit plan itself shall not be “deemed” an insurance company or insurer for purposes of any state law purporting to regulate such companies or insurance contracts. 29 U.S.C. § 1144(b)(2)(B). This Court’s application of that clause in the present matter is guided, at least in part, by Senior United States District Court Judge Walter Jay Skinner’s opinion in
 
 Bergin,
 
 863 F.Supp. 34. In
 
 Bergin,
 
 Judge Skinner determined that Section 1101, the parallel general insurance provision noted above, may in certain contexts be preempted by ERISA by virtue of the deem-er clause.
 
 Bergin,
 
 863 F.Supp. at 38. In making this determination, Judge Skinner distinguished between “insured” plans on the one hand, and “uninsured” or “self-funded” plans on the other.
 
 Id.
 
 at 37. Judge Skinner found that that self-funded plan before him could not be deemed an insurance contract regulated by the state. As a result, ERISA preemption applied.
 

 The Supreme Court has similarly acknowledged that it has made “‘a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not.’ ”
 
 FMC,
 
 498 U.S. at 62, 111 S.Ct. at 409 (quoting
 
 Metropolitan Life,
 
 471 U.S. at 747, 105 S.Ct. at 2393). In doing so, the Supreme Court “ ‘merely g[a]ve life to a distinction created by Congress in the “deemer clause,” a distinction Congress is aware of and one it has chosen not to alter.’ ”
 
 Id.
 
 Notably, this Court has found no case preempting Section 5A, or indeed Section 1101, if the plan was not self-funded.
 

 The plan at issue here, is clearly not self-funded. At the time of the divorce, the Cellillis’ health care coverage was provided and administered by CIGNA — one of seventeen different health care options offered by Northeast. Of the seventeen options, eleven were HMOs, five were self-funded, and there was the option of no coverage. In fact, in a publication describing their health care coverage, Northeast states that it “self-funds the health benefits under [its] [g]roup Dflnsuranee [p]lan,
 
 except for HMO
 
 coverage which is provided through a contract with each of the HMOs at the appropriate group rate.” Plaintiffs Opposition to Defendants’ Motion for Summary Judgment, Exhibit 1 at 24 (emphasis added).
 

 In addition, Northeast defines its self-funded plans as ones in which “all claims are paid from [its] general assets” and that the cost of coverage is “based on the
 
 actual claims experience
 
 of the plan and the cost of administration.” Id. (emphasis added). In comparison, under the HMO agreement between Northeast and CIGNA, Northeast pays fixed rates for all employees. This “[prepayment [flee” is defined as “the sum of money paid periodically to [CIGNA] by [Northeast] in order for the [mjembers to receive the services and benefits covered by the [a]greement.” Id., Exhibit 2 at 6. Thus, in exchange for fixed rates, the employees are offered
 
 potentially unlimited
 
 benefits and services by the HMO plans. Accordingly, as applied to the facts of this case, the HMO plan under which Plaintiff was provided benefits when married is an insured plan, unaffected by the deemer clause, and thereby regulated by Section 5A. As indicated, Section 5A itself is not preempted by ERISA.
 

 This result is directly in accord with
 
 Physicians Health Plan, Inc. v. Citizens Ins. Co. of America,
 
 673 F.Supp. 903 (W.D.Mich. 1987). In
 
 Physicians Health Plan,
 
 the court held that a section of the Michigan insurance code affecting the relationship between an employee benefit provider — an HMO — and a third party was not preempted by ERISA, an analysis with which this Court agrees:
 

 HMOs and insurance companies share the indicia of the “business of insurance.” Both assume the risk that their members
 
 *78
 
 or insureds will require benefits in excess of the consideration paid. An HMO accepts the risk as an obligation to directly provide benefits to its members. An insurance company accepts the risk as an obligation to indemnify its insureds for the cost of such benefits. The difference is immaterial. In either scheme, the principle is the same: for a fixed fee, the risk and responsibility of providing benefits is shifted from a beneficiary to a third party insurer.
 

 Id.
 
 at 907. Cf.
 
 Butler v. Wu,
 
 853 F.Supp. 125, 130 (D.N.J.1994) (comparing HMOs to “traditional insurers”).
 

 Needless to say, this Court must respectfully disagree with the analysis in
 
 Ryan v. Fallon Community Health Plan, Inc.,
 
 921 F.Supp. 34, 38 (D.Mass.1996), to the extent it noted, in
 
 dicta,
 
 that M.G.L. ch. 176G “does not regulate insurance within the meaning of the savings clause of ERISA”. In any event, the only provisions of Chapter 176G considered in
 
 Ryan
 
 were Sections 7, 8, 9,14 and 16 which have no direct parallel in Chapter 175. By contrast, there is clear reliance in the present matter on a provision of Chapter 176G, Section 5A, that directly duplicates a general insurance provision, section 1101, and is purposely aimed at the insurance industry.
 
 [5]
 
 Further, even the
 
 Ryan
 
 court recognized that the sections of Chapter 176G at issue there “may relate to and impact the insurance industry.”
 

 8. Defendants ’ Remaining Arguments
 

 Having thus concluded that, as applied to the facts of this case, Section 5A is not preempted by ERISA, the Court tarries briefly on Defendants’ remaining arguments. First, Defendants’ reliance on
 
 Dearmas v. Av-Med, Inc.,
 
 814 F.Supp. 1103 (S.D.Fla. 1993), holding that HMOs did not fall within the insurance savings clause, is misplaced.
 
 Dearmas,
 
 as well as the case upon whieh it was grounded,
 
 O’Reilly v. Ceuleers,
 
 912 F.2d 1383, 1389 (11th Cir.1990), interpreted Florida law. See also
 
 Dees v. PrimeHealth,
 
 894 F.Supp. 1549, 1555 (S.DAla.1995) (noting that, as in Florida, “Alabama distinguish[es] between HMOs and insurance companies”);
 
 McManus v. Travelers Health Network of Texas,
 
 742 F.Supp. 377, 382 (W.D.Tex.1990) (construing Texas law in reaching result similar to Dearmas). Here, the issue obviously involves an interpretation of Massachusetts law.
 

 Second, Defendants cannot rely on
 
 Arizona v. Maricopa County Medical Soc.,
 
 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982), for the proposition that “HMOs do not insure benefits.” Defendants’ Motion for Summary Judgment at 4.
 
 Maricopa
 
 was not as broad as Defendants suggest; it merely described HMOs, in a footnote, as “[a]n alternative to the fee-for-serviee
 
 type
 
 of insurance plan.”
 
 Maricopa
 
 at 339 n. 7, 102 S.Ct. at 2470 n. 7 (emphasis added). Similarly, Defendants inaccurately characterize the Supreme Court’s most recent ERISA preemption case,
 
 Travelers,
 
 — U.S.-, 115 S.Ct. 1671, as a case which “drew a distinction ... between insurance and health care provided by HMOs.” Defendants’ Motion for Summary Judgment at 4. While the Court in
 
 Travelers
 
 variously referred to “commercial insurance” and “HMOs,” see, e.g.,
 
 id.,
 
 at -, 115 S.Ct. at 1679, it did not distinguish between the two for purposes of ERISA preemption.
 

 Third, the Court is not persuaded by Defendants’ argument that it would be too costly, and contrary to ERISA’s goal of uniformity, to require Defendants to comply with Section 5A Defendants offer no concrete evidence demonstrating that compliance with Section 5A would be unduly burdensome. More significantly, however, it is not the concern of this Court that its recommendation may result in some disuniformities. As the Supreme Court has stated, “disuniformities ... are the inevitable result of the congressional decision to ‘save’ local insurance regulation. Arguments as to the wisdom of these policy choices must be directed at Congress.”
 
 Metropolitan Life,
 
 471 U.S. at 747,
 
 *79
 
 105 S.Ct. at 2393. In short, none of Defendant’s remaining arguments deter this Court from concluding that, under the facts of this case, Section 5A is not preempted by ERISA.
 

 C. LACK OF SUBJECT MATTER JURISDICTION
 

 Finally, it is necessary to address the issue of this Court’s remaining subject matter jurisdiction of this case, originally filed in the context of a post-divorce action in the Hampden County Probate and Family Court. As the parties must
 
 perforce
 
 concede, there is no diversity jurisdiction here, see 28 U.S.C. § 1330, nor is there a direct claim under federal law and, thus, no obvious federal question which would give this Court jurisdiction, see 28 U.S.C. § 1331. Defendants’ only justification for their notice of removal was their allegation that Plaintiffs state law claim was preempted by ERISA. Since, however, there is no preemption, there can be no original jurisdiction in this Court and, as such, no remaining justification for removal.
 
 Caterpillar, Inc. v. Williams,
 
 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987);
 
 Cuoco v. Nynex, Inc.,
 
 722 F.Supp. 884, 887 (1989). Further, even though removal was not opposed by Plaintiff, “subject matter jurisdiction cannot be conferred on federal courts by consent, and a federal court is obliged to remand a removed ease
 
 sua sponte
 
 when it becomes apparent that subject matter jurisdiction is lacking.”
 
 Cuoco, supra
 
 (citing
 
 People’s Bank of Belville v. Calhoun,
 
 102 U.S. (12 Otto) 256, 260-62, 26 L.Ed. 101 (1880); and
 
 Saint Paul Mercury Indem. Co. v. Red Cab Co.,
 
 303 U.S. 283, 287-88 n. 10, 58 S.Ct. 586, 589-90 n. 10, 82 L.Ed. 845 (1938)). See also
 
 Crespo v. Candela Laser Corp.,
 
 780 F.Supp. 866 (D.Mass. 1992).
 

 y CONCLUSION
 

 For the reasons indicated, the Court thus recommends holding that M.G.L. ch. 176G, § 5A is not preempted by ERISA, insofar as it pertains to the health plan at issue here. Therefore, there being no genuine dispute as to any material facts, the Court recommends that Defendants’ motion for summary judgment be DENIED. In addition, there being no subject matter jurisdiction, the Court recommends that the matter be REMANDED to state court for further proceedings.
 
 [6]
 

 [1]
 

 . Massachusetts General Laws Chapter 176G, Section 5A provides as follows:
 

 § 5A. Divorced or separated spouses; coverage
 

 (a) In the event of the granting of a judgment absolute of divorce or of separate support to which a member of a group health maintenance contract is a party, the person who was the spouse of said member prior to the issuance of such judgment shall be and remain eligible for benefits under said contract, whether or not said judgment was entered prior to the effective date of said contract, without additional premium or examination therefor, as if said judgment had not been entered; provided, however, that such eligibility shall not be required if said judgment so provides. Such eligibility shall continue through the member's participation in the contract until the remarriage of either the member or such spouse, or until such time as provided by said judgment, whichever is earlier.
 

 (b) In the event of the remarriage of the member referred to in paragraph (a), the former spouse thereafter shall have the right, if so provided in said judgment, to continue to receive benefits as are available to the member, by means of the addition of a rider to the family contract or the issuance of an individual contract, either of which may be at additional premium rates determined by the commissioner of insurance to be just and reasonable in accordance with the additional insuring risks involved.
 

 (c) The name, address, and policy number of a person eligible for health insurance coverage pursuant to paragraph (a) or (b), if available, shall be forwarded by such health maintenance organization to the department of public welfare within thirty days of the date when coverage of said person under said paragraph (a) or (b) is commenced.
 

 (d) Notice of cancellation of coverage of the divorced or separated spouse of a member shall be mailed to such divorced or separated spouse at such person's last known address, together with notice of the right to reinstate coverage retroactively to the date of cancellation.
 

 (e) Claims paid on behalf of a divorced or separated spouse or on behalf of a dependent who is not residing with the member shall be paid to the physician, hospital or other provider of covered services or to the person on whose behalf such services were performed, unless the person is a minor child. In the event the person on whose behalf such services were performed is a minor, payment shall be made to the physician, hospital or other provider of such services or to the parent or custodian with whom the child resides.
 

 [2]
 

 . Although the "well-pleaded complaint” rule typically prohibits removal on the basis of federal question jurisdiction where no issue of federal law appears on the face of the complaint,
 
 Gully
 
 v.
 
 First Nat. Bank,
 
 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936);
 
 Louisville & N.R. Co.
 
 v.
 
 Mottley,
 
 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908), there is an exception where the removing party asserts a claim of ERISA preemption, see
 
 Metropolitan Life Ins. Co. v. Taylor,
 
 481 U.S. 58, 63-66, 107 S.Ct. 1542, 1546-48, 95 L.Ed.2d 55 (1987). See also
 
 McCoy v. Massachusetts Institute of Technology,
 
 950 F.2d 13, 14 n. 1 (1st Cir.1991),
 
 cert. denied,
 
 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992);
 
 Bergin
 
 v.
 
 Wausau Ins. Cos.,
 
 863 F.Supp. 34, 36 (D.Mass. 1994).
 

 [3]
 

 . Similarly, the Massachusetts regulations pertaining to HMOs, 211 C.M.R. § 43.00, are contained within the section entitled "Division of Insurance,” and certain regulations pertaining to “marketing of insurance" refer to "anyone engaged in the business of insurance ...
 
 including HMOs,"
 
 id. (emphasis added).
 

 [4]
 

 . Section 5A, enacted in 1984 (St.1984, ch. 414), § 6, parallels, virtually word for word, another Massachusetts provision, found within the general "Insurance" chapter, which provides for similar benefits for a divorced spouse whose former spouse was part of a "group hospital, surgical, medical, or dental insurance plan.” See M.G.L. Ch. 175, § 1101 ("Section 1101”), enacted in 1981 (St. 1981, ch. 735). Both Section 5A and Section 1101 were amended with virtually identical provisions, subsections (d) and (e), in 1988 (St.1988, ch. 23, §§ 49, 64). The main difference between the two sections is that Section 1101 is directed at the general insurance industry, while Section 5A is directed specifically at HMOs.
 

 [5]
 

 . Although there are vague similarities between M.G.L. ch. 176G, § 14, enacted in 1976 (St.1976, ch. 454, § 1), and M.G.L. ch. 175, § 149H, enacted in 1991 (St.1991, ch. 508), the Court does not find nearly the intentional parallel as can be found between Section 5A and Section 1101. See
 
 supra
 
 at n. 4 and accompanying text.
 

 [6]
 

 . The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party’s receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See
 
 Keating v. Secretary of Health & Human Services,
 
 848 F.2d 271, 275 (1st Cir.1988);
 
 United States v. Valencia-Copete,
 
 792 F.2d 4, 6 (1st Cir.1986);
 
 Park Motor Mart v. Ford Motor Co.,
 
 616 F.2d 603, 604 (1st Cir.1980);
 
 United States v. Vega,
 
 678 F.2d 376, 378-79 (1st Cir.1982); and
 
 Scott v. Schweiker,
 
 702 F.2d 13, 14 (1st Cir.1983). See also
 
 Thomas v. Arn,
 
 474 U.S. 140, 154-55, 106 S.Ct. 466, 474-75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.