**I.V. SERVICES OF AMERICA, INC., Plaintiff,**

v.

**INN DEVELOPMENT & MANAGEMENT, INC., et al., Defendants.**

Civil Action No. 96–30144–MAP.

United States District Court, D. Massachusetts.

May 13, 1998.

Francis A. Miniter, Joseph D. Uradnik, Miniter & Associates, Hartford, CT, for I.V. Services of America, Inc.

Patrick J. Riley, Eric P. Finamore, Riley, Burke & Donahue Danvers, MA, for Inn Development & Management, Inc.

Edward S. Rooney, Jr., Lyne, Woodworth & Evarts, Boston, MA, for ReliaStar.

## MEMORANDUM REGARDING REPORT & RECOMMENDATION OF APRIL 16, 1998 ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### (Docket Nos. 27 & 30)

PONSOR, District Judge.

Upon *de novo* review, this court hereby adopts the Report and Recommendation of Judge Neiman dated April 16, 1998. The Motion for Summary Judgment of the defendant Inn Development & Management, Inc. (Docket No. 27) is hereby allowed and the portion of the Motion for Summary Judgment of the defendant ReliaStar seeking judgment against the plaintiff (Docket No. 30) is also allowed. The portion of ReliaStar's motion seeking summary judgment as to the cross-claim of IDM is hereby denied as moot.

As the well-reasoned memorandum of Magistrate Judge Neiman demonstrates, the undisputed facts confirm that plaintiff was on notice of the defendant's denial of benefits no later than May of 1991. Despite a three-year limitation period clearly set forth in the applicable contract, and by the most analogous law, plaintiff waited until 1995 before even attempting to obtain a copy of the Plan and until August of 1996 before bringing this lawsuit. This was simply too late. Plaintiff's counsel's vigorous and resourceful efforts to overcome the hurdle established in the limitations provision are unavailing.

A separate order will issue.

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 27 and 30) and DEFENDANT RELIASTAR'S MOTION FOR SUMMARY JUDGMENT ON IDM'S CROSS CLAIM (Docket No. 30)

NEIMAN, United States Magistrate Judge.

I.V. Services of America, Inc. ("Plaintiff"), has sued both Inn Development Management Inc. ("IDM") and ReliaStar Insurance Co. ("ReliaStar") (collectively "Defendants") pursuant to the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001 *et seq.* In essence, Plaintiff, a provider of intravenous services, seeks payment for services rendered to Sheila Daly ("Daly"), a former IDM employee and beneficiary of its health plan. Daly herself is not a party to this action. Plaintiff alleges that it is owed $120,947.30 and pursues its claim based on an assignment of benefits executed in its favor by Daly.

IDM and ReliaStar have filed separate motions for summary judgment against Plaintiff. ReliaStar has also filed its own motion for summary judgment against IDM seeking a declaration that it is entitled to contractual indemnification in the event liability is found. All three motions have been referred to the court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court recommends that both Defendants' motions for summary judgment against Plaintiff be allowed and, as a result, that ReliaStar's mo-

tion for summary judgment against IDM be denied as moot.

## I. *SUMMARY JUDGMENT STANDARD*

In accord with Fed.R.Civ.P. 56(c), summary judgment will be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Magee v. United States,* 121 F.3d 1, 3 (1st Cir.1997). Once the moving party has demonstrated that no genuine issue of material fact exists, the burden is on the opposing party to contradict the demonstration by coming "forward with specific provable facts which establish that there is a triable issue." *Aponte Matos v. Toledo Davila,* 135 F.3d 182, 186 (1st Cir.1998). A genuine issue is one which a reasonable fact finder could resolve in favor of the nonmoving party. *Id.*

Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir.1997) (internal quotations omitted). The facts are to be viewed in a light most favorable to the non-movant. *See Dykes v. Depuy, Inc.,* 140 F.3d 31, 36 (1st Cir. 1998).

## II. *FACTUAL BACKGROUND*

In 1990, Plaintiff provided intravenous services to Daly, as ordered by her physician, for Lyme disease. (ReliaStar Exhibit I.) At the time, Daly worked at the Sheraton Hotel in Mansfield, Massachusetts, which was owned and managed by IDM. (Complaint ¶¶ 7, 16.) Prior to providing services, Plaintiff received a "Benefits Assignment Form" from Daly, the specifics of which are described below. On May 14, 1990, Plaintiff made its initial claim for benefits under the IDM medical plan ("Plan") that covered Daly. (ReliaStar Exhibit I; Finamore Aff. I, Attach. A.)

IDM's self-funded Plan provided medical benefits to all qualified IDM employees. (Gilley Aff., Attach. A.) The Plan paid benefits if the treatment or service was "medi-cally necessary," that is, "required for the diagnosis or treatment for the sickness or accidental injury and commonly and customarily recognized as appropriate throughout the doctor's profession." (Gilley Aff., Attach. A.) Pursuant to the Plan, if benefits were denied, the claimant had to request an appeal "at any time during the 60 day period following receipt of the notice of the denial of the claim." (Id.) Moreover, "[l]egal action must be taken within 3 years after the date proof of loss must be submitted. If the Planholder's state requires longer time limits than these, the Plan will comply with the state time limits." (Id.)

IDM's health benefit Plan was administered by ReliaStar pursuant to an Administrative Services Only agreement ("ASO") executed on May 1, 1988.(Id.) The ASO provided that IDM was the Plan Sponsor for purposes of ERISA. As Plan Sponsor, IDM was responsible for all interim and final claim denials. ReliaStar would not be liable for payments made under the Plan and was to be held harmless and indemnified for all such claims. ReliaStar could be liable for a breach of due care in performance of its administrative duties. Those duties included such functions as investigating and processing claims. The ASO provided that IDM was to be copied on all correspondence, including claim denials.

Daly's treatment consisted of intravenous antibiotic treatments which, according to her treating physician, were to last six to eight weeks. Instead, the treatment spanned April through August of 1990, (Finamore Aff. II, Attach. E, G), even when Daly repeatedly tested negative for Lyme disease. (ReliaStar Exhibit J.) Claiming that Daly's treatments were not "medically necessary," ReliaStar requested information regarding Daly's ongoing medical treatment on May 31, July 25, August 15 and October 15, 1990. (Finamore Aff. I, Attach. D.) Information was sent in response to these requests on June 8, August 27 and November 6. (Id., Attach. B, E, G.) ReliaStar claims, however, that the documentation was incomplete and, in any case, was ambiguous and at times contradictory regarding Plaintiff's diagnosis. (*See* ReliaStar Exhibit J.)

In letters sent both to Daly and Plaintiff's president, Maureen Teachman ("Teachman"), on April 19 and May 13, 1991, ReliaStar acknowledged that it had paid Plaintiff $9,246.66, for the first four weeks of therapy, but refused to pay the rest. (Finamore Aff. I, Attach. C.) Teachman later testified that she was aware of the denial of benefits based, at least, upon the letter of May 13, 1991. (Teachman Dep. (Pl.Exhibit B.) at 76.)

Several telephone calls were made by Daly and Teachman to ReliaStar at the time of the denial in May of 1991. However, no formal appeals process pursuant to the Plan was undertaken by either one. (Daly Dep. (Pl.Exhibit A) at 69–70; Teachman Dep. (Pl.Exhibit B) at 76–77.) Plaintiff claims it was unaware of the appeals process. In turn, Teachman asserts that she requested copies of the health care policy from ReliaStar on August 10, 1995, but was refused a copy. (Teachman Dep. at 79.) Teachman never requested a copy of the policy at any prior time. (Id.) Plaintiff also claims to have requested a copy of the Plan from IDM, which request was allegedly ignored. (Id.) At some time after the denial, Daly filed a complaint with the Massachusetts Commissioner of Insurance, whose investigation was inconclusive.

One final set of facts: at the time that ReliaStar and IDM entered into the ASO, the two parties also entered into an Aggregate Excess Risk Insurance Policy. (Gilley Aff., Attach. B.) Pursuant to that policy, IDM was insured against excess claims made against its self-funded plan. (Id.) ReliaStar would pay IDM benefits, subject to a deductible, for claims which exceeded a certain amount for each calendar year. (Id.) IDM was not informed of the dispute over Daly's claim until after the time limit for presentation of a claim under the Aggregate Excess Risk policy had expired. (Gilley Aff. ¶¶ 7, 12.) According to IDM's president, IDM may have chosen to submit Plaintiff's claim under the Aggregate Excess Risk Policy if it had been so advised. (Id. at ¶ 11.) IDM also maintains that the only correspondence it received regarding the instant claim was a copy of the May 13, 1991, denial letter sent to Daly. (Gilley Aff. ¶ 6.)

## III. DISCUSSION

The Employee Retirement Income Security Act governs employee benefit plans and has a comprehensive enforcement scheme. In pertinent part, the enforcement provisions provide that a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). *See Waters Corp. v. Millipore Corp.,* 140 F.3d 324, (1st Cir. 1998). A civil action may also be brought "by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title," that is, for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). Finally, a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Regulatory enforcement is grounded in this language and is even more complex, providing various causes of action for a myriad of violations. *See, generally,* 29 C.F.R. § 2560.502 *et seq.*

In the present matter, Plaintiff asserts several violations of the ERISA statutory scheme, most specifically Defendants' failure (a) to provide adequate notice of denial of benefits, (b) to properly consider evidence of Daly's disease, both in violation of ERISA section 503, 29 U.S.C. § 1133, and (c) to pay benefits in violation of ERISA sections 404 and 502, 29 U.S.C. § 1104 and § 1132.

### A. Standing

Defendants jointly pursue several arguments for judgment as a matter of law. At the threshold is Defendants' assertion that Plaintiff lacks standing to pursue its claim. Defendants contend that no express cause of action for medical providers exists under ERISA and, because no implied right of action may be construed from Congressional silence, *Franchise Tax Bd. of State of*

*Cal. v. Construction Laborers Vacation Trust for S.Cal.*, 463 U.S. 1, 24–25, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), that summary judgment is warranted.

As indicated, various enumerated parties may maintain civil enforcement actions under ERISA. Most particularly, a participant, beneficiary or fiduciary may bring an action to recover benefits due under an ERISA health plan. 29 U.S.C. §§ 1002(7), (8). A health care provider, however, is not an enumerated party for the purposes of 29 U.S.C. § 1002, nor is it generally considered a participant or beneficiary under the plan, 29 U.S.C. § 1132(a)(1)(B). Although there is a split in the circuits as to whether an unenumerated party, such as a health care provider, nonetheless has independent statutory standing to sue under ERISA, *Hermann Hosp. v. MEBA Med. Benefits Plan*, 845 F.2d 1286, 1287–88 (5th Cir.1988), it appears that, in this circuit, the list of parties to which a jurisdictional grant has been explicitly given is exclusive. *See Kwatcher v. Mass. Serv. Emp. Pension Fund*, 879 F.2d 957, 964 (1st Cir.1989).

This exclusivity, however, does not foreclose the possibility that a health care provider may obtain derivative standing to proceed under ERISA as an assignee of health care benefits from a plan participant or beneficiary. *See Tarr v. State Mut. Life Assurance Co. of Am.*, 913 F.Supp. 40, 45 (D.Mass.1996) (citing cases). Granted, ERISA incorporates a "complex and extensive" provision which prohibits the assignment of a participant's *pension* benefits. *Misic v. Bldg. Serv. Emp. Health & Welfare Trust*, 789 F.2d 1374, 1376 (9th Cir.1986). The legislative history of that anti-assignment provision reveals Congress's explicit intent to secure an individual's retirement income. *See* H.R.Rep. No. 807, 93d Cong., 2d Sess., at 8 (1976), *reprinted in* 1974 U.S.C.C.A.N. 4670, 4676. In contrast, however, ERISA is silent with respect to the assignment of health benefits, a Congressional silence which may well speak volumes. *See Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147–48, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Hermann*, 845 F.2d at 1289; *Misic*, 789 F.2d at 1374.

While the First Circuit has not yet considered the question, the weight of persuasive authority militates in favor of permitting a health care provider to exercise derivative standing when assigned a claim for reimbursement for medical services rendered. Although the court is not prepared to suggest that a health care provider becomes a statutory "beneficiary" upon receipt of such an assignment, *see Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1278 (6th Cir.1991); *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991); *Misic*, 789 F.2d at 1377, the court does believe that standing to sue for unpaid benefits may be derived from an assignment and that such standing is wholly consistent with ERISA's broad scope. *See Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir.1997).[1]

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Andrews-Clarke v. Travelers Ins. Co.*, 984 F.Supp. 49, 56 (D.Mass.1997) (internal citations omitted). A prohibition against an assignment of health benefits would work to the detriment of a participant or beneficiary and would frustrate ERISA's distinct goal to protect covered individuals. If anything, a health services assignment "transfer[s] the burden of bringing suit from plan participants and beneficiaries to providers who are better situated and financed to pursue an action for benefits owed for their services." *Hermann*, 845 F.2d at 1286. Thus, "[a]n assignment to a health care provider facili-

---

1. *See also Lutheran Medical Center v. Contractor's Health Plan*, 25 F.3d 616, 619 (8th Cir.1994); *Hermann Hosp.*, 845 F.2d at 1289 (5th Cir.); *Protocare of Metropolitan N.Y. v. Mutual Ass'n Admr's, Inc.*, 866 F.Supp. 757 (S.D.N.Y.1994); *HCA–Health Services of N.H. v. Tennford Weaving Co.*, No. 93–624–JD, 1994 WL 575744, at *3 (D.N.H. Oct. 20, 1994); *Lifetime Med. Nursing Servs., Inc. v. New England Health Care Employees Welfare Fund*, 730 F.Supp. 1192 (D.R.I.1990).

*But see* Michael A. deFreitas, *Right of Provider of Health or Medical Services, as Assignee of Claim under ERISA (Employment Retirement Income Security Act of 1974), To Maintain Action Against Plan Payor*, 133 A.L.R. Fed 109 (1996) (citing cases in which a health care provider as an assignee had no right to sue because health care provider was not an enumerated party in 29 U.S.C. § 1132(a)(1)(B)).

tates rather than hampers the employee's receipt of health benefits. These factors comprise sufficient evidence of Congress' intention to allow the assignment of health benefits." *Id.* at 1289–90. It follows from Congress' desire to protect individual employees that health care benefits, unlike pension payments, should be assignable. *See Tarr,* 913 F.Supp. at 45–46.

■ An assignee with derivative standing may generally assert whatever rights the assignor possessed. *See Hermann Hosp.,* 845 F.2d at 1289; *see also Lifetime Med. Nursing Servs.,* 730 F.Supp. at 1195. The assigned rights are also limited by the terms of the assignment itself, *see Tarr,* 913 F.Supp. at 45 and, as with any other contract, a court can determine its scope. *Nichols v. Cadle Co.,* 139 F.3d 59, 62–64 (1st Cir. 1998); *Hermann Hosp. v. MEBA Med. and Benefits Plan,* 959 F.2d 569 (5th Cir.1992); *Fashion House, Inc. v. K mart Corp.,* 892 F.2d 1076 (1st Cir.1989); *Lawrence–Lynch Corp. v. Department of Envtl. Management,* 392 Mass. 681, 467 N.E.2d 838, 839 (Mass. 1984).

Having undertaken the task, the court doubts, as did the court in *Tarr,* that the *pro forma* "Benefits Assignment Form" confers all of Daly's rights as a plan participant, as Plaintiff claims. (*See* IDM Exhibit A (Docket No. 29).) If anything, the actual assignment is limited in scope in several ways. Thus, to the extent Plaintiff wishes to stand in Daly's shoes, they are borrowed shoes at best.

First, Daly herself remains obligated to pay any unpaid medical bills. The express language of the assignment provides as follows: "I have been advised that should my medical insurance program not make payment in full, for charges incurred, or if I am not covered by an insurance plan, that I will be responsible for any unpaid portions." Being obligated, Daly perforce retained all of her rights as a plan participant to make direct claims against Defendants for any breach of their fiduciary duties. Second, Daly only authorized "direct payment to

[Plaintiff] ... for durable medical equipment, nutritional solutions and other intravenous medications, supplies and professional services provided by [Plaintiff] or its affiliates," as well as "any other equipment or supplies prescribed by my physician for the period of medical necessity." No further rights were assigned. In fact, the assignment fails to provide Plaintiff with an express right to sue for payment.

The court nonetheless finds that the assignment, although it accomplishes little else, does enable Plaintiff to sue for services rendered. An assignment to receive payment of benefits necessarily incorporates the right to seek payment. As Plaintiff argues, the right to receive benefits would be hollow without such enforcement capabilities. As the First Circuit recently opined, "Congress intended the federal courts to construe the Act's jurisdictional requirements broadly in order to facilitate the enforcement of its remedial provisions." *Vartanian v. Monsanto Co.,* 14 F.3d 697, 702 (1st Cir.1994). In sum, the court believes that, as a result of the assignment, Plaintiff has standing to sue Defendants in order to seek payment for medical services provided Daly.

### B. *Statute of Limitations*

Defendants also seek summary judgment on statute of limitations grounds. In essence, Defendants assert that Plaintiff's action is barred by a three year limitations period. In response, Plaintiff asserts that the court should apply the six-year ERISA limitation set out at 29 U.S.C. § 1113, a period of time which would enable Plaintiff's action to survive. In the alternative, Plaintiff argues that the six-year limitations period applicable to Massachusetts contract actions should be adopted. Finally, Plaintiff maintains that even a three year statute of limitations would pose no bar because the statute must be tolled for the period of time Defendants "concealed" the Plan.

■ To begin with, the court does not believe that the limitations period in 29 U.S.C. § 1113 applies to the instant matter.[2]

---

2. In pertinent part, the cited statute provides as follows:

No action may be commenced under this subchapter with respect to a fiduciary's breach of

This section of the statute only provides an express time period in which to file suit to enforce fiduciary duties under ERISA. Although Plaintiff makes reference to such a claim, the heart of Plaintiff's complaint is a claim for the value of services provided Daly and allegedly due under the Plan. Section 1113 has not been held, nor does the court believe it to be, applicable to such causes of action. *Cf. Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1290 (10th Cir.1991) (reversing district court decision applying section 1113 limitations period to a section 1132 claim for benefits because such claims do "not involve fiduciary responsibility regarding financial solvency or accountability as contemplated by § 1113."). Moreover, the court has already determined that the assignment itself limits Plaintiff to a claim for unpaid benefits.

■ Congress, however, has failed to establish a statute of limitations in ERISA for a participant's, or for that matter a health care provider's, cause of action to recover payment for services rendered. *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 45 (3d Cir. 1990). *See also Trustees of the Local Union No. 17 Sheet Metal Workers' Apprenticeship Fund v. May Eng'g Co., Inc.*, 951 F.Supp. 346, 348 (D.R.I.1997); *Giuffre v. Delta Air Lines, Inc.*, 746 F.Supp. 238, 240–41 (D.Mass. 1990). In such instances, "[i]t is the usual rule that ... a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). This well established practice has it roots in the Rules of Decision Act, 28 U.S.C. § 1652. *Id.* The sole exception to this general rule is when a state limitations period would frustrate the overall policy of the federal law. *Lampf*, 501 U.S. at 356, 111 S.Ct. 2773.

As this court has previously explained, three factors should be considered in order to determine the most analogous state limitations period. *Siniscalchi v. Shop–Rite Supermarkets, Inc.*, 903 F.Supp. 182, 188 (D.Mass.1995). First, how close an analogy can be drawn between the chosen state statute and the federal law under which a plaintiff proceeds. Second, how close are the policy implications behind the selected state statute and the federal law. Third, how well do the practicalities of the chosen statute apply to the federally based litigation.

Plaintiff maintains that the Massachusetts six year statutory limitations period for contract claims should be adopted by analogy because the "gist of the action" is contractual. *See* M.G.L. ch. 260 § 2 ("Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, ... shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."). Indeed, it is undisputed that other federal courts have applied state statutes of limitations for contract actions to claims for payments of medical benefits under ERISA. *See Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 465 (7th Cir.1991); *Wright*, 925 F.2d at 1288. Defendants, on the other hand, claim that the most analogous statute is M.G.L. ch. 175 § 108, because it governs any "policy of accident and sickness insurance" issued by an insurer in the Commonwealth. In applicable part, the statute provides that "[n]o such action [at law or in equity to recover under the policy,] shall be brought after the expiration of three years after the time written proof of loss is required to be furnished." M.G.L. ch. 175 § 108(3)(a)(11).

At first blush, the more specialized statute governing insurance benefits would appear to provide the better analogy. *Cf. Johnson v. State Mut. Life Assurance Co. of Am.*, 942 F.2d 1260 (8th Cir.1991) (en banc) (action to

any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
  (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

  (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.
29 U.S.C. § 1113.

recover benefits is more like an action on a contract for the payment of money than a generalized contract statute) (overruling *Fogerty v. Met. Life Ins. Co.*, 850 F.2d 430 (8th Cir.1988)). Accordingly, the three year statute of limitations set out at M.G.L. ch. 175 § 108 would seem most analogous to ERISA health benefit claims. Subparagraph 11, for example, regulates the actions of an insurer vis-a-vis a medical provider and speaks directly to the non-payment of benefits. M.G.L. ch. 175 § 108(11).

This insurance analogy fades upon closer analysis. As Defendants themselves make clear, the Plan is self-funded. Thus, rather than providing benefits to its employees through an insurance company, for which a fixed rate is paid by the employer to the company, IDM pays claims out of its own assets. ReliaStar, unlike an insurance company *qua* insurance company, is simply the administrator of the plan. The self-funded health plan at issue, therefore, reflects a more direct contractual relationship between IDM and its employees than an insurance program.

This distinction between "self-funded" plans and "insured" plans has proven significant in other contexts as well. For example, in *Bergin v. Wausau Ins. Companies*, 863 F.Supp. 34, 36 (D.Mass.1994), the court found that the self-funded plan at issue could not be deemed an insurance program regulated by the state for purposes of ERISA preemption. The Supreme Court similarly acknowledged "a distinction between insured and uninsured plans, leaving the former open to indirect regulations while the latter are not." *FMC Corp. v. Holliday*, 498 U.S. 52, 60, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). This court too has drawn the distinction between a self-funded plan and an insurance plan when finding ERISA preemption inapplicable to the particular plan at issue. *See Cellilli v. Cellilli*, 939 F.Supp. 72, 77 (D.Mass.1996).

As to the first prong of the analysis, therefore, the most analogous state statute of limitations is that applicable to contracts. A six year statute of limitations is also consistent with ERISA's goal of ensuring that governed plans inure to the benefit of covered individuals. Finally, six years is more than sufficient time in which to commence an action, thereby decreasing the likelihood of forum shopping. *Cf. Siniscalchi*, 903 F.Supp. at 188.[3]

■ Unfortunately for Plaintiff, the court's inquiry does not end here, for the Plan at issue contains its own limitations period. As indicated, the Plan requires a claimant to request an appeal "at any time during the 60 day period following receipt of the notice of the denial of the claim." In addition, a claimant must commence legal action "within 3 years after the date proof of loss must be submitted." Only "[i]f the Planholder's state *requires* longer time limits than these" (emphasis added), must the Plan comply with the state time limit.

There is no question that Massachusetts law does not *require* a longer time period. *See Salcedo*, No. 96–11567 at *5. At best, the six year contractual limitations period has been chosen by analogy. Moreover, the law is settled in this circuit, based in Massachusetts law, that contracting parties may agree upon a shorter limitations period as long as it is reasonable. *Hays v. Mobil Oil Corp.*, 930 F.2d 96, 100 (1st Cir.1991) (approving a one year contractual limitations period for unfair and deceptive business practices). *See generally* B.H. Glenn, *Validity of Contractual Time Period, Shorter than Statute of Limitations, for Bringing Action*, 6 A.L.R.3d 1197 (1966); *see also Vickers v. Boston Mutual Life Insurance Co.*, 135 F.3d 179 (1st Cir. 1998) (because federal ERISA law is still in a "formative stage," the court can rely on such "common-sense cannons of contract interpretation and borrow the best reasoned concepts from state law") (citations and internal quotes omitted); *L & A United Grocers, Inc. v. Safeguard Ins. Co.*, 460 A.2d 587, 590 (Me.1983). ("In the absence of statutory regulations to the contrary, an insurance con-

---

**3.** The court notes as well that, pursuant to § 108(8), the provisions of ch. 175 § 108, the insurance statute, apparently do not apply to "any blanket or group policy of insurance." This particular exclusion caused the court in *Salcedo* *v. John Hancock Mut. Life Ins. Co.*, No. 96–11567 (D.Mass. Feb. 20, 1998), to reject, at least initially, the three year limitations period in M.G.L. ch. 175 § 108(3)(a)(11) in favor of the six year contract limitations period.

tract may validly provide for a limitations period shorter than that provided in the general statute of limitations, unless the interval allowed is unreasonably short.") (citations omitted).

Here, the Plan admits of no ambiguity. *See Berkshire Mut. Ins. Co. v. Burbank,* 422 Mass. 659, 664 N.E.2d 1188, 1190 (Mass.1996) (to create a valid and enforceable contract the express language of the contract must be clear and unambiguous). *Compare Salcedo* at *7. A claimant has three years within which to commence suit. Moreover, the limitations period is reasonable, courts having often concluded that a contract which provides three years for a claim of this type is sufficient. *Salcedo,* No. 96–11567 at *5–6. *See also Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.,* 405 F.Supp. 147, 151 (D.De.1975) (approving a one year contractual limitations period).

Still, faced with a three year contractual limitations period, Plaintiff argues that Defendants failed to issue proper notice of denial in compliance with 29 U.S.C. § 1133 and regulations promulgated thereunder. 29 C.F.R. § 2560.503–1(f). Plaintiff also asserts that Defendants failed to provide a copy of the health care plan to either Daly or Plaintiff. These arguments, however, are offered primarily in support of Plaintiff's claim that Defendants' conduct made the exhaustion of administrative remedies unnecessary. *See Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir. 1990); *McLean Hosp. Corp. v. Lasher,* 819 F.Supp. 110, 125 (D.Mass.1993); *DePina v. Gen. Dynamics Corp.,* 674 F.Supp. 46, 50 (D.Mass.1987). For purposes here, the court has not deemed Plaintiff's "failure" to exhaust its administrative remedies as a bar to its ability to seek judicial relief. Thus, the court agrees that, at least with respect to the requirement that a notice of denial include "[a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his claim for review," 29 C.F.R. § 2560.503–1(f)(4), Defendants failed to issue such a denial in this case.

To the extent these same arguments are targeted at the statute of limitations itself, however, they prove unavailing. There is no genuine factual dispute that Plaintiff and Daly were aware that medical benefits had been denied. Thus, there can be no dispute that Plaintiff's claim accrued at least in May of 1991, when both Daly and Plaintiff were "in possession of the critical facts that they ha[d] been hurt and who ha[d] inflicted the injury." *United States v. Kubrick,* 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Defendants' failure to abide by certain notice requirements in the federal regulations, while excusing Daly, and in turn Plaintiff, from exhausting administrative remedies, does not excuse Plaintiff from seeking judicial relief in a timely fashion.

In a series of letters during 1990, ReliaStar specifically requested additional information from Plaintiff in order to evaluate Daly's claim for coverage. (*See* Finamore Aff. (Docket No. 35) at Exhibits A, B, C, D, E, F and G.) ReliaStar made clear that the "[l]ack of sufficient information may cause us to deny a just liability." (*See Id.* at Exhibit F.) Then, on April 19, 1991, ReliaStar, in a letter to Daly, a copy of which was sent to Plaintiff, stated that "[t]he balance of the expenses from May 11, 1990 to August 14, 1990 have been denied as the records did not provide documentation of continued medical necessity of the IV therapy." (Id. at Exhibit H.) Shortly thereafter, in a letter dated May 13, 1991, after Daly herself had a conversation with a ReliaStar representative, ReliaStar again denied coverage, this time explaining its decision in greater detail. The letter concluded:

We regret our benefit determination could not be more favorable; however, we must administer the plan as it is written. Our decision was based on information in our file which lacked documentation indicating the medical necessity for the continued IV therapy. Further, this treatment is not commonly and customarily recognized as appropriate throughout the doctor's profession.

(Id. at Exhibit I.) Again, a copy of this letter was sent to Plaintiff.[4]

---

4. The letter also explained that certain surgical

expenses, amounting to $3,317.20, were paid in

The evidence presented demonstrates beyond any doubt that Daly had actual knowledge of the denial of her benefits in April and then again in May of 1991. (*See also* Daly Dep. (Docket No. 29) at Exhibit E.) The president of Plaintiff corporation was also aware of the denial of benefits at the time. (*See Id.* at Exhibit F.) Indeed, at her deposition, Plaintiff's corporate president acknowledged that a certain copy of the May 13, 1991 letter reflected her own handwritten notes of her conversation with a ReliaStar representative shortly after the denial. Plaintiff acknowledges the import of these facts in its complaint before the court.[5]

Hanging on by a thread, Plaintiff goes on to assert that the limitations period must be tolled under M.G.L. ch. 260 § 12 because of "Defendants' acts of concealment in failing to give a copy of the health care plan to Ms. Daly and refusing to provide it to Plaintiff." (Pl.Mem. (Docket No. 38) at 26.) In pertinent part, M.G.L. ch. 260 § 12 provides an exception to the accrual of a cause of action in contract if a defendant "fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it." "[T]he period of limitations [is] not tolled ... unless the defendant concealed the existence of a cause of action through some affirmative act done with the intent to deceive." *Frank Cooke, Inc. v. Hurwitz*, 10 Mass.App.Ct. 99, 406 N.E.2d 678, 683 (Mass.App.Ct.1980). *See also Shane v. Shane*, 891 F.2d 976, 986 (1st Cir.1989); *Janigan v. Taylor*, 344 F.2d 781, 783–84 (1st Cir.1965).

In pursuing this claim of concealment, Plaintiff attempts to shift the burden to Defendants, arguing that "Defendants failed to establish that they ever gave a copy of [the Plan] to Ms. Daly." (Pl.Mem. at 23.) That

attempt must fail. First, with respect to M.G.L. ch. 260 § 12 itself, a plaintiff bears the burden of providing evidence from which it may reasonably be inferred that a defendant concealed the cause of action. *Quigley v. Unum Life Ins. Co.*, 688 F.Supp. 80, 83–84 (D.Mass.), *aff'd without opinion*, 887 F.2d 258 (1st Cir.1989). Moreover, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As this court has previously noted, once a defendant has interposed a defense regarding a limitations period, it is the plaintiff's burden at summary judgment to allege sufficient facts that would allow it to overcome the defense. *O'Rourke v. Jason, Inc.*, 978 F.Supp. 41, 47 (D.Mass.1997) (citing *Newburgh v. Florsheim Shoe Co.*, 200 F.Supp. 599, 604 (D.Mass. 1961); *Mendes v. Roche*, 317 Mass. 321, 58 N.E.2d 148 (Mass.1944); *Smith v. Pasqualetto*, 146 F.Supp. 680 (D.Mass.1956), *vacated on other grounds*, 246 F.2d 765 (1st Cir. 1957)).

In the instant case there is simply no evidence of concealment. Even when viewed in a light most favorable to Plaintiff, the evidence hardly describes an affirmative act of concealment on the part of Defendants. Daly's deposition, regarding her receipt of the Plan, is equivocal at best. If anything, Daly's testimony supports an assumption that she received a copy of the Plan during her employment with IDM.[6]

---

error. ReliaStar indicated, however, that it was "not going to actively seek reimbursement of this overpayment amount." (Finamore Aff. at Exhibit I.)

5. Plaintiff's complaint alleges that "by letter dated April 19, 1991, Defendant ReliaStar informed Daly and [Plaintiff] that after an additional review by its medical consultants, Defendant ReliaStar denied long term treatment for Daly..." (Complaint ¶ 34.) Paragraph 38 of the complaint similarly alleges that "Defendant ReliaStar reiterated its position by letter dated May 13, 1991."

6.    Q. Let me ask you now, at the time that you started working or at some time when you worked for the Sheraton, do you remember ever getting some written information about the health insurance that you—that was covering you from the people at the Sheraton?
A. I—I don't remember. I don't remember specifically. If you want me to remember a detailed time, I don't remember.
Q. No, no, my question is just whether you remember getting—
A. Usually when we had different insurances and they would change or whatever, they would usually have like a meeting and talk to

As to its own claims, Plaintiff vaguely maintains that between 1991 and 1995 it made efforts to resolve the claim administratively. (Teachman Dep. at 76–77.) What the record shows, however, is that Plaintiff made no effort to obtain a copy of the Plan until 1995, well after three years from the initial denial of Daly's claim for benefits. (*See Id.* at 79.) Had it not chosen to sit on whatever rights it had, Plaintiff may well have been able to seek judicial relief in a timely fashion.

Neither does the more general doctrine of equitable tolling apply here. First, the doctrine is reserved for "exceptional cases" only. *Chico–Velez v. Roche Prod.,* 139 F.3d 56, 59 (1st Cir.1998). As the Supreme Court explains:

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (footnotes and internal citations omitted). Those cases where the doctrine is invoked are characterized by affirmative conduct by the party against whom it is employed. *Kelley v. National Labor Relations Board,* 79 F.3d 1238, 1247 (1st Cir.1996). In

the case at bar, no such evidence with respect to the applicable time period has been adduced.

Applying the Plan's three year limitations to the case at bar, the court finds that the action accrued at the time of the denial of benefits which was, at the latest, May 13, 1991. Plaintiff either knew or should have known that, as of that date, it needed to assert any rights assigned to it by Daly or run the risk of losing them. While sympathetic to Plaintiff's quest to obtain payment, the court finds those efforts belated and ineffective. Accordingly, the court will recommend that summary judgment be allowed as to both Defendants.[7]

## IV. *CONCLUSION*

For the foregoing reasons, the court recommends that both IDM's motion for summary judgment (Docket No. 27) and that part of ReliaStar's motion seeking judgment against Plaintiff (Docket No. 30) be ALLOWED. The court also recommends that that part of ReliaStar's motion for summary judgment as to IDM (Docket No. 30) be DENIED as moot.[8]

April 16, 1998.

---

us about it or they would give us literature on it. Usually that's how it would work.
Q. Let me show you this document, which is Exhibit 18 at Maureen Teachman's deposition [the Plan], and just ask you whether you ever recall seeing that document before.
A. I don't know, this is kind of big. I don't know if I recall this.
Q. Okay.
A. You know? I do recall IDM Development & Management, Inc., I do recall that. Because that was one of the companies that was involved at the Sheraton within the ten years or whatever years I worked there.
Q. Okay. And but as you sit here today, you don't know one way or another whether you saw that document?
A. You know, I'd imagine—I would imagine. Yeah, I don't recall.
Q. Just want to know what you remember.

A. Yeah. It's just like I said, we had so many people—you know, I would get what I was supposed to get, you know, and that's it.
(Pl.Mem. at Exhibit A.)

7. Given its recommendation, the court finds it unnecessary to resolve whether ReliaStar acted in its capacity as a fiduciary, a functional fiduciary or in some capacity as a co-fiduciary with IDM. *See Beddall v. State Street Bank and Trust Company,* 137 F.3d 12 (1st Cir.1998).

8. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation.

The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v.*

*Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v.. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.