CREATIVE PLAYTHINGS FRANCHISING, CORP., & others[1] *vs.*
JAMES A. REISER, JR.

Suffolk. April 5, 2012. - November 21, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Contract,* Franchise agreement. *Limitations, Statute of.*

This court concluded that in a franchising agreement governed by Mas-
sachusetts law, a limitations period in the contract shortening the time
within which claims must be brought is valid and enforceable, if the claim
arises under the contract, and the agreed-upon limitations period is subject
to negotiation by the parties, is not otherwise limited by controlling statute,
is reasonable, is not a statute of repose, and is not contrary to public
policy. [761-766]

CERTIFICATION of a question of law to the Supreme Judicial
Court by the United States District Court for the District of
Massachusetts.

*Jason W. Morgan* (*Colin M. Black* with him) for the plaintiffs.

*K. Judith Lane* (*Steven Shane Smith* with her) for the defendant.

*John Pagliaro & Martin J. Newhouse,* for New England Legal
Foundation & another, amici curiae, submitted a brief.

DUFFLY, J. This case, before us as a certified question from
the United States District Court for the District of Massachusetts,
presents whether:

"In a franchise agreement which is governed by Mas-
sachusetts law, is a limitations period in the contract shorten-
ing the time within which claims must be brought valid
and enforceable under Massachusetts law?"

General Laws c. 260, § 2, sets forth a six-year limitations
period, after a cause of action based on contract accrues, within
which such an action may be brought. Nonetheless, in particular

[1]Creative Playthings, Ltd., and CP Licensing Corp.

circumstances, we have long allowed the limitations period within which a claim arising from a contract may be brought to be shortened by contractual agreement.[2] See, e.g., *Albrecht* v. *Clifford*, 436 Mass. 706, 717-718 (2002) (plaintiffs' claims for breach of express warranty on construction of new home, brought five years after purchase, were barred "by the parties' own limitation[s] period" of one year, where plaintiffs did not notify builder of any problem within one-year notice period set forth in purchase and sale agreement); *Cunningham Leather Co.* v. *American-Hawaiian S.S. Co.*, 285 Mass. 232, 234-235 (1934) (holding four-month contractual limitations period for liability for hides shipped enforceable, and noting that it is "well settled" that common carriers may enforce such contractual limitations periods "provided they are just and reasonable and not contrary to public policy"); *Amesbury* v. *Bowditch Mut. Fire Ins. Co.*, 6 Gray 596 (1856) (*Amesbury*) (holding that six-year statutory limitations period for bringing insurance claim may be shortened to four months by contract bylaw); *Nute* v. *Hamilton Mut. Ins. Co.*, 6 Gray 174, 177, 180-181 (1856) (limiting discussion to provision in insurance policy, but observing in dicta, "The time within which money shall be paid, land conveyed, a debt released, and the like, are all matters of contract, and depend on the will and act of the parties . . . . A stipulation, that an action shall not be brought after a certain day or the happening of a certain event, . . . is a stipulation that a right shall cease and determine if not pursued in a particular way within a limited time, and . . . is a fit subject for contract, affecting the right created by it").

We have not, however, stated categorically that such a shortening of the statutory limitations period is generally enforceable. We discern no reason why Massachusetts contract law should differ from Federal law on this issue, or why limitations provisions should be singled out and subject to a blanket prohibition against the parties' agreement to any shortening of the statutorily prescribed maximum limitations period. See *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, 446 Mass. 422, 430 (2006) ("Under

[2]We acknowledge the amicus brief of New England Legal Foundation and Associated Industries of Massachusetts in support of Creative Playthings Franchising, Corp.

freedom of contract principles, generally, parties are held to the express terms of their contract, and the burden of proof is on the party seeking to invalidate an express term"); 15 A. Corbin, Contracts § 79.4, at 20 (rev. ed. 2003). See generally *I.V. Servs. of Am., Inc.* v. *Inn Dev. & Mgt., Inc.*, 7 F. Supp. 2d 79, 86 (D. Mass. 1998), aff'd, 182 F.3d 51 (1st Cir. 1999), citing Annot., Validity of Contractual Time Period, Shorter than Statute of Limitations, for Bringing Action, 6 A.L.R.3d 1197 (1966). Where a claim arises based on a contract, and the contractually shortened limitations period is reasonable and not contrary to other statutory provisions or to public policy, we answer the certified question in the affirmative.

*Background.* The essential facts in this case are undisputed. Creative Playthings, Ltd., a Massachusetts corporation, designs, manufactures, and markets residential outdoor wooden swing sets and related products. In August, 2004, the defendant, James A. Reiser, Jr., entered into a franchising agreement with Creative Playthings Franchising, Corp. (Creative),[3] to operate a Creative Playthings franchise store in Florida, where he resided. The agreement states that, except to the extent governed by United States trademark law, it would "be deemed executed in Massachusetts and its interpretation, validity and performance as well as the relationship of the parties, and all of their rights, shall be governed by the law of the Commonwealth of Massachusetts." Section 6.09 of the agreement contains a "Limitations" clause providing:

> "Notwithstanding any provision of law which provides for a longer limitations period, we agree that neither will bring, commence or maintain an action or claim of any kind, in connection with any liability or obligation of the other party arising in connection with this Agreement or

---

[3]Creative Playthings Franchising, Corp., was a Massachusetts corporation and an affiliate of Creative Playthings, Ltd.; it was created for the purpose of licensing individual franchise owners to operate Creative Playthings stores. In August, 2009, it filed articles of voluntary dissolution with the Secretary of the Commonwealth, pursuant to G. L. c. 156B, § 102, with the provision that it would continue in existence for three years to settle its affairs. CP Licensing Corp. is an affiliate of Creative Playthings Franchising, Corp., with headquarters in Massachusetts. It owns the trademark "Creative Playthings." For convenience, we refer to the entities jointly as Creative.

the relationship created hereby, or otherwise, unless brought before the expiration of the earlier of (i) one (1) year after the date of discovery of the facts resulting in such alleged liability or obligation, or if earlier, the date such facts should or could have been discovered with reasonable diligence; or (ii) eighteen (18) months after the date of the first act or omission giving rise to such alleged liability or obligation. Actions and claims brought or asserted after expiration of the applicable limitations period shall be barred."

In July, 2009, Creative terminated its agreement with Reiser, alleging that he was in default for, inter alia, having purchased equipment directly from suppliers rather than through Creative, failing to pay trademark usage fees required under the franchise agreement, failing to pay required advertising expenses, and failing to reach annual sales quotas as set forth in the agreement. In September, 2009, Creative commenced this action against Reiser in the United States District Court for the District of Massachusetts for breach of contract and associated claims, and trademark infringement, alleging that Reiser was continuing to use the "Creative Playthings" trademark and trade name after termination of the franchise agreement. Reiser filed a counterclaim alleging breach of the implied covenant of good faith and fair dealing, fraudulent inducement, violations of G. L. c. 93A, and violations of Fla. Stat. Ann. § 501.976 (West 2010) against unfair and deceptive trade practices.

In January, 2011, Creative moved for summary judgment on Reiser's counterclaims, asserting that they were time barred under the limitations provision in the franchise agreement. Citing *Puleio* v. *North Coast Sea-Foods Corp.*, 78 Mass. App. Ct. 1102 (2010), an unpublished memorandum and order of the Appeals Court pursuant to its rule 1:28, the Federal District Court judge issued an order declining to decide Creative's motion in reliance on the limitations provision; the judge stated that "Massachusetts [S]tate courts have yet to decide 'the question of whether contractually shortened statutes of limitations are generally enforceable under Massachusetts law.' " In June, 2011, the judge certified the question to this court.

*Discussion.* 1. *Validity of contractually shortened limitations*

*periods.* In 1856, we held that a stipulation, contained in a bylaw of a mutual fire insurance company, that in case of loss, any action for such loss claimed must be brought within four months after the denial of the claim was valid. *Amesbury, supra.* In reaching this conclusion, we relied on long-standing common-law principles:

> " 'We have been referred to no statute, or principle of the common law, forbidding such a condition. Originally there was no limitation to actions. . . . [T]he first general statute on the subject[] provided that suits should be brought within six years after the cause of action had accrued, "and not after." But there is nothing in this act, forbidding a limitation short of this period, by stipulation of the parties. It only prohibits the suit after the six years.' 'We cannot doubt that, before the [limitations statute], it was competent for the parties, by a clause in their contract, to limit the time within which, in case of a breach, an action should be brought. As the period was then indefinite, there could be no limit, unless it was thus fixed. There is nothing in the act, necessarily or by fair construction, taking away this right.' "

*Amesbury, supra* at 603-604, quoting *Cray* v. *Hartford Fire Ins. Co.,* 6 F. Cas. 788, 790-791 (C.C.D. Conn. 1848) (No. 3,375).

Consistent with our holding in *Amesbury,* the Legislature has accepted the premise of a contractually shortened limitations period, while, in specific circumstances, choosing to establish a minimum time period below which certain types of contracts may not be shortened if their limitations periods are reduced below the six-year period set forth in G. L. c. 260, § 2. Indeed, in June, 1856, the Legislature enacted a statute that prohibited insurance companies from limiting "the time of commencing . . . suit to a less period than two years from the time the right of said suit or action shall accrue." St. 1856, c. 252, § 9.[4] With regard to the sale of goods under the Commonwealth's

---

[4]With minor modification in language, that requirement has remained in effect to the present day. See G. L. c. 175, § 22 ("No company . . . shall make, issue or deliver any policy of insurance or any annuity or pure endowment contract containing any condition, stipulation or agreement . . . limiting the time for commencing actions against it to a period of less than two years from the time when the cause of action accrues . . .").

implementation of the Uniform Commercial Code, the Legislature has explicitly adopted the concept of a contractually shortened limitations period. See G. L. c. 106, § 2-725 (1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it").

Moreover, as Creative emphasizes, under Federal law, "[t]he dominant view . . . is that contractual limitations periods shorter than the statute of limitations are permissible, provided they are reasonable." *Alcorn* v. *Raytheon Co.*, 175 F. Supp. 2d 117, 121 (D. Mass. 2001), quoting *Doe* v. *Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 874 (7th Cir. 1997). See, e.g., *I.V. Servs. of Am., Inc.* v. *Inn Dev. & Mgt., Inc.*, 7 F. Supp. 2d 79, 86 (D. Mass. 1998), citing *Hays* v. *Mobil Oil Corp.*, 930 F.2d 96, 100 (1st Cir. 1991) (summary judgment for franchisor allowed based on limitations period in franchise agreement). The United States Supreme Court has recognized contracting parties' rights to reduce the period within which they may bring an action to enforce the contract to a shorter period than that set forth in a State's general statute of limitations, provided that there is no controlling statute to the contrary and the shorter period is reasonable. See *Order of United Commercial Travelers of Am.* v. *Wolfe*, 331 U.S. 586, 608 & n.20 (1947).

Reiser has offered no reason that we should depart from this view, and we find none. Such issues as unconscionably short limitations periods, public policy concerns regarding specific types of agreements, and protection of parties with unequal bargaining power, raised by Reiser, are adequately addressed by the requirement that any limitations period must be reasonable in the particular circumstances, and not contrary to public policy. What constitutes a reasonable period of time in which to require commencement of a legal action will vary according to the type of contract, the circumstances in which a given agreement is reached, and the particular provisions of that agreement. Any contractual reduction in a limitations period that is unreasonable or not subject to negotiation by the parties, such as in a contract of adhesion, will be unenforceable. Where public policy so requires, the Legislature may enact restrictions on, or prohibit,

contractually shortened limitations periods, as it has in the case of insurance contracts. See G. L. c. 175, § 22.

2. *Discovery rule.* Reiser argues that, under our discovery rule, contractually shortened limitations periods are not valid and enforceable if the limitations period ends before the injured party "could or should" have discovered the facts resulting in the harm; he maintains that the limitations provision in Creative's franchise agreement expressly permits such a shortening, and is therefore unenforceable.

The Massachusetts discovery rule, "which operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured, may arise in three circumstances: where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrong-doer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." *Albrecht* v. *Clifford*, 436 Mass. 706, 714 (2002), quoting *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 328 (2001). We agree that a contractual limitations provision that did not permit operation of the discovery rule would be unreasonable and, therefore, invalid and unenforceable.

The limitations provision at issue sets forth a maximum eighteen-month period after the first act or omission giving rise to any liability within which a party must bring a claim, regardless of whether the act or omission "could have been discovered with reasonable diligence." This language would appear to impose a limitation of repose, which would be per se invalid and unenforceable; limitations of repose may be imposed only by the Legislature. See *Sisson* v. *Lhowe*, 460 Mass. 705, 718 (2011); *Joslyn* v. *Chang*, 445 Mass. 344, 350-351 (2005). However, other provisions in the agreement appear to modify this limitation and to make enforcement contingent on numerous factors that would bear on an analysis of reasonableness.[5] Because the certified question is narrowly defined and does not concern

---

[5]For example, the agreement is for a ten-year period and provides that the franchisee must reach certain annual sales figures or be in default. An addendum to the agreement, however, states that the annual sales requirement will "be enforced only following careful review of the circumstances sur-

the specific language in Creative's franchise agreement, we need not reach the question whether this particular limitations provision is unenforceable because it violates the discovery rule or creates an impermissible repose limitation.

3. *Shortening of limitations periods in franchise agreements.* Relying on G. L. c. 260, § 5A (four-year statute of limitations for violations of certain statutes intended for protection of consumers, none of which specifically concerns franchise agreements), and G. L. c. 93B, § 17 (four-year statutory limitations period for motor vehicle dealership franchises), Reiser contends also that contractually shortened limitations periods are contrary to Massachusetts public policy and unenforceable if contained in a franchise agreement. He argues that the Legislature's imposition of a longer limitations period under G. L. c. 260, § 5A, reflects a statutory scheme to "remedy the imbalance" in bargaining power between a small franchisee and a large corporate franchisor, and that the Legislature did not intend to permit any shortening of the limitations period set forth in G. L. c. 260, § 5A, with respect to any franchise agreement.

This argument is unavailing. First, nothing in the record indicates that the Legislature intended to treat franchisees such as Reiser, who own and operate individual stores selling goods to the public, as individual consumers. Contrast *Coverall N. Am., Inc. v. Commissioner of the Div. of Unemployment Assistance*, 447 Mass. 852 (2006) (worker who provided cleaning services under so-called "franchise" agreement was not independent contractor but actually employee of cleaning corporation). Furthermore, by explicitly prohibiting any contractual alteration to the four-year limitations period for actions brought under motor vehicle dealership franchise agree-

rounding any performance below" that set forth in the requirement, and after considering whether "causes beyond the control of the franchisee" may have "negatively impacted" the franchisee's performance.

Whether eighteen months is a reasonable time in which to determine the amount of annual receipts and whether causes beyond the control of the franchisee had resulted in sales below the yearly quota requires findings of fact not available in the record before us, and may be in some doubt. Assuming the minimum franchise area of 100,000 households with children, the gross sales quotas would require that approximately three per cent of the households in Reiser's franchise area purchase a new swing set (if all purchased the least expensive model) every year.

ments, see G. L. c. 93B, § 16 (*a*) ("Any provision of a franchise agreement or practice thereunder in violation of this chapter shall be against public policy and shall be void and unenforceable"), the Legislature deliberately chose not to include other types of franchise agreements in this restriction. See G. L. c. 93B, § 2 ("Any person who engages directly or indirectly in purposeful contacts in the commonwealth in connection with the offering or advertising for sale or has business dealings with respect to a motor vehicle in the commonwealth shall be subject to this chapter . . .").

As to concerns about remedying the imbalance of bargaining power between a small franchisee and a large corporate franchisor, the same concern could be raised about any provision in a franchise agreement; if the Legislature determines that restrictions on the content of franchise agreements in general are necessary as a matter of public policy, a proposition for which Reiser has not provided any record support, the Legislature may enact such limitations. Any contractual reduction of a limitations period in a franchise agreement that is unreasonable or not subject to negotiation by the parties would be unenforceable.

*Conclusion.* We answer the reported question, "Yes, if the claim arises under the contract, and the agreed-upon limitations period is subject to negotiation by the parties, is not otherwise limited by controlling statute, is reasonable, is not a statute of repose, and is not contrary to public policy."

The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court. The clerk will transmit one copy, under the seal of the court, to the clerk of the United States District Court for the District of Massachusetts, as the answer to the question certified, and will also transmit a copy to each party.

*So ordered.*